[Civ. No. 14828. First Dist., Div. One. Mar. 17, 1952.]

FLORENCE ROGERS, Respondent, v. RETIREMENT
BOARD OF SAN FRANCISCO CITY EMPLOYEES'
RETIREMENT SYSTEM et al., Appellants.

752

Dion R. Holm, City Attorney, and Louis T. Kruger, Deputy City Attorney, for Appellants.

George B. White for Respondent.

PETERS, P. J.—The Retirement Board of San Francisco denied Florence Rogers, the widow of a police officer, a pension. On writ of mandate to the superior court a peremptory writ issued ordering the board to grant Mrs. Rogers a pension. The board appeals.

Respondent is the widow of John Rogers, who was a member of the police force in San Francisco. In June of 1944, after 19 years of service, Rogers, then aged 52, applied for a disability retirement, claiming to be suffering from traumatic arthritis caused by injuries received by him in 1930 or 1931 in the course and scope of his employment.

Rogers testified that before entering the police department he had had no trouble with his back; that in January, 1930, while operating a motorcycle in responding to a police call, he bumped into an obstruction and received a terrific jar, dislocated a vertebra, and developed an acute neuritis. A severe pain developed in his right arm and lower back. He was treated by the police doctor, his own doctor, and a chiropractor, and gradually improved. In 1941, while attempting to arrest an intoxicated man, the two were catapulted down some stairs, resulting in a twisted ankle and a sore back. He

testified that after the 1930 accident his back was always "tender," and that he had acute attacks of pain every couple of months.

In 1942, Rogers, because of his condition and at his request, was transferred to traffic duty, operating a three-wheel motorcycle. In 1943, while starting this motorcycle, the starting pedal kicked back, again injuring his back. X rays showed no broken bones, but his doctor then informed him that he had developed arthritis. The police doctor ordered that Rogers be taken off the motorcycle detail and assigned to light duty. Rogers testified that from that date until the date of the hearing (May 2, 1945), he had had continuous pain in his back, and was unable to perform his duties. By stipulation, all of the records of the police department and retirement board pertaining to Rogers were considered as having been introduced.

Dr. Shumate, a doctor connected with the retirement board, testified that he examined Rogers in 1943 and found a back muscle spasm, and considerable arthritis, which could have been traumatic in origin. He was of the opinion that Rogers was permanently disabled for active duty of any strenuous character. No mention was made during these hearings of any heart condition, Rogers and the doctors being unaware that, in addition to his other ailments, he also had a bad heart.

The retirement board approved Rogers' application for disability retirement, finding that he was disabled and that such disability had been "incurred in performance of duty during 1930 or 1931." Since the board approved the retirement request, Rogers did not, of course, apply for any rehearing. He retired, moved to Sonoma County, and died April 4, 1946.

On April 10, 1946, Mrs. Rogers filed the present application, on a form furnished by the retirement board, for a "continuation" of the retirement allowance. It was her theory that her husband had died from a heart condition that had been aggravated by his activities as a police officer.

At the hearing of Mrs. Rogers' application several witnesses testified as to Rogers' condition during the period from 1943 to 1945 when he was on so-called "light" duty. McCann, a fellow police officer, testified that Rogers was assigned the duty of serving traffic warrants; that there is always a backlog of 160 to 200 such warrants to be served; that only one officer is used for this purpose; that service of a warrant re-

quires the officer to climb stairs of the many old houses and apartments in the area; that Rogers was engaged in such activities from about 9:30 a. m. to 4 p. m. each day; that Rogers would accompany him on special details about five times a month; that during these periods Rogers complained about shooting pains up his back and right arm; that Rogers' condition was such that he, McCann, would not have thought of asking Rogers to help him make an arrest.

A Mrs. Davis, a sister of Mrs. Rogers, prepared Mr. Rogers' lunch each day while he was on duty serving warrants. She testified that Rogers constantly complained of exhaustion and shortness of breath, of severe pains in his arms and back, and of having to climb so many stairs. She also testified that during these periods of exhaustion Rogers' lips would turn blue.

Mrs. Rogers testified that shortly after her husband retired in May of 1945 they moved to Sonoma County where he rested; that in January, 1946, he attempted to start a real estate business, but discovered that he became completely exhausted if he tried to show properties to prospective customers. After February of 1946, he confined his activities entirely to office work. She also testified that, after her husband's injury in 1943, and after he had been placed on "light" duty, he continued to suffer severe pain in his lower back and under his arm—the same area where he mentioned pain the night of his death; that after he retired from the police force this pain got progressively more severe. She pointed out that their San Francisco home had 23 stairs and Mr. Rogers had great difficulty in climbing them. This was one of the factors that induced them to move to Sonoma, where the house had but two front steps.

On the date of his death, April 4, 1946, Mr. Rogers complained of not feeling well, but nevertheless went to the office in the morning and afternoon. After dinner that night, while listening to the radio, he complained of severe pains in his back and arm. After undressing, and while getting into his pajamas, he fell over dead.

The autopsy surgeon, Dr. McGrath, testified that he discovered that death was caused by a severe coronary occlusion, and that Mr. Rogers had been suffering from arteriosclerosis of the coronary arteries. The condition that he found gradually developed over a period of quite a few years, and could have started in 1930 when Rogers first noticed pains in his back and arm. Physical exertion or emotional strain would,

in the opinion of the doctor, accelerate the progress of the disease. The doctor explained that when the heart muscle is diseased, as here, pain is not felt in the heart, which has no sensation of pain, but is referred to other sensory areas; that while it is not common for the pain to be referred to the back, that does happen; that the most common referral pain radiates down the arms; that the pain from which Rogers suffered just prior to his death was connected with the heart attack. The doctor was also of the opinion that the back pains described by Rogers at the hearings of his application for disability could easily have been due to his heart condition, and that the conditions then described by Rogers—pain resulting if he ran, or climbed stairs—were consistent with a chronic heart condition. Dr. McGrath was definitely of the opinion that the so-called "light" duties performed by Rogers after he was taken off the motorcycle detail aggravated the heart condition. This, in the opinion of the doctor, hastened Rogers' death. Proper rest, during this period, would have arrested or slowed down the progress of the disease.

This concluded all of the evidence produced before the retirement board at the hearings. The matter was taken under submission on September 25, 1946. On October 14, 1946, the secretary of the board wrote to a Dr. du Bray, enclosing copies of the transcripts of the hearings, and requesting a report. Dr. du Bray replied by a letter dated October 22, 1946, which was received by the board October 28, 1946, stating that he had examined the record and that, in his opinion, Rogers died of a progressive heart condition that was in no way connected with his employment.

A copy of this letter was not sent to Mrs. Rogers or to her counsel, and they had no notice of it. On October 30, 1946, the petition of Mrs. Rogers was denied by a vote of four to two, one member not voting, and a petition for rehearing was denied three to three.

Thereupon, Mrs. Rogers filed a petition for a writ of mandate in the superior court. That court found that the heart condition causing Rogers' death was progressive and developed during his active service; that the condition arose out of and in the course of Rogers' employment; that Rogers' life was shortened by reason of the strain imposed on his heart during the period he was required to climb stairs and serve warrants. The court also found that when Rogers was retired the cause of his retirement was mistakenly assigned as due to the physical injuries already discussed; that all of the evi-

dence before the board on Mrs. Rogers' application showed that death was due to heart disease aggravated by the employment, and that in denying her application the board abused its discretion. The superior court therefore ordered that a pension be awarded Mrs. Rogers. The retirement board appeals.

The first contention of the board is that the superior court had no jurisdiction of the writ of mandate because the retirement board granted Rogers retirement for a cause not connected with the cause of his death, and neither he nor his wife petitioned for a rehearing. It is urged that because no petition for rehearing was then filed in that proceeding, Mrs. Rogers is precluded in this proceeding from seeking a review by mandate. The point lacks merit. It is true that under the provisions of section 208 of the Municipal Code of San Francisco a petition for rehearing is permitted to an applicant, or, in the event of his death, to his beneficiary, if they are dissatisfied with the award. At least as to boards exercising state-wide jurisdiction, a petition for rehearing must be filed as a condition precedent to proceeding by mandate or certiorari to review the decision of the board. (*Alexander* v. *State Personnel Board,* 22 Cal.2d 198 [137 P.2d 433]; *Child* v. *State Personnel Board,* 97 Cal.App.2d 467 [218 P.2d 52].) If it be assumed that this rule is applicable to proceedings before local boards, such rule has no application to the present case. The appellant is relying on the fact that Mr. Rogers did not apply for a rehearing to assert his heart condition as an additional ground for disability retirement, even though the evidence shows that he and the board's doctors were then ignorant of that fact, and even though Mr. Rogers had been granted everything he requested, that is, disability retirement. Mrs. Rogers had no legal right to intervene in that proceeding to protect her possible right to a widow's pension, as long as her husband was alive.

■ The board urges that Mrs. Rogers' application for a widow's pension is not an independent proceeding, but a "continuation" of her husband's application for a disability retirement. In this connection the board points out that Mrs. Rogers' application is entitled "Application for Continuation of Retirement Allowance." This was on a form provided by the board. This form cannot change the nature of the proceeding. ■ It is too clear to require extended discussion that Mrs. Rogers' application for a widow's pension is a separate and independent proceeding from that of her husband

to secure disability retirement. Mrs. Rogers could not have intervened or participated in that proceeding. ██ The law is clear that a widow has the legal right to apply for a pension if her husband's death was caused by, accelerated or precipitated by the employment, regardless of whether or not her husband, during his lifetime, was or was not retired for disability. (*Naughton* v. *Retirement Board of San Francisco*, 43 Cal.App.2d 254 [110 P.2d 714].) On her petition, Mrs. Rogers complied with the requirement that a petition for rehearing be filed. That is all that is required. What her husband did or did not do is a false issue.

The next point raised by the board is that the evidence before the board was conflicting, and, this being a local board, the superior court was bound by the findings of that board. ██ ██ It is undoubtedly the law that a local board, as distinguished from a board exercising state-wide jurisdiction, acts, under the Constitution, in a quasi-judicial fashion and that its findings, based on conflicting evidence, are binding on the superior court in the mandate or certiorari proceedings brought to review them. (*Naughton* v. *Retirement Board of San Francisco*, 43 Cal.App.2d 254 [110 P.2d 714]; *Mogan* v. *Board of Police Comrs.*, 100 Cal.App. 270 [279 P. 1080]; *McColgan* v. *Board of Police Comrs.*, 130 Cal.App. 66 [19 P.2d 815]; *Bennett* v. *Brady*, 17 Cal.App.2d 114 [61 P.2d 530]; *Hogan* v. *Retirement Board*, 13 Cal.App.2d 676 [57 P.2d 520]; *Murphy* v. *Retirement Board*, 49 Cal.App.2d 58 [121 P.2d 101].) ██ Of course, if the local board makes findings totally unsupported by the evidence, it has acted in excess of and in abuse of its discretion, and its decision will be set aside. In the instant case, all of the evidence produced before the board demonstrates, without conflict, that the heart condition from which Rogers died was accelerated by his employment. The board admits that this was so, but contends that the letter of Dr. du Bray was properly before the board, and that it created a conflict in the evidence. The question then is, was this letter evidence that the board was entitled to consider? If so, it creates a conflict. If not, it should be disregarded.

██ That this letter was not in evidence before the board is obvious. Dr. du Bray never appeared before the board, did not testify under oath, and the respondent had no opportunity to examine him; in fact, respondent had no notice of the letter until after the decision was rendered. ██ This

board acts in a quasi-judicial capacity. Its findings, based on conflicting evidence, are binding on the courts. It has no power to take or receive evidence, without the knowledge of the party adversely affected, or without giving him a right to cross-examine. These boards act as judicial bodies, with a limited jurisdiction. While not bound by technical rules of judicial procedure, they must afford the parties appearing before them a reasonably fair hearing. They cannot, lawfully, decide cases on evidence not submitted to or known by the other side. (*La Prade* v. *Department of Water & Power*, 27 Cal.2d 47 [162 P.2d 13].) Such "evidence" must be disregarded when the case is submitted for judicial review. (*Olive Proration etc. Committee* v. *Agricultural etc. Com.*, 17 Cal.2d 204 [109 P.2d 918].) For this reason, the letter of Dr. du Bray must be disregarded.

 Without the letter of Dr. du Bray, all of the evidence before the board indicated that Rogers' death was accelerated by the employment. In addition, there is a statutory rebuttable presumption that heart trouble, developing during the service of a police officer, arose out of the employment. (Lab. Code, § 3212.5.) Under the circumstances, the board clearly abused its discretion in denying the pension, and the superior court quite correctly ordered that the petition be granted. (*Naughton* v. *Retirement Board of San Francisco*, 43 Cal.App. 2d 254 [110 P.2d 714]; *Peters* v. *Sacramento City Emp. R. System*, 27 Cal.App.2d 10 [80 P.2d 179]; *Brant* v. *Retirement Board of San Francisco*, 57 Cal.App.2d 721 [135 P.2d 396].)

The judgment is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.