[No. B161436. Second Dist., Div. Three. Apr. 24, 2003.]

NIGHTLIFE PARTNERS, LTD., et al., Plaintiffs and Respondents, v. CITY OF BEVERLY HILLS, Defendant and Appellant.

**COUNSEL**

Laurence S. Wiener, City Attorney; Richards, Watson & Gershon, Mitchell E. Abbott and Patrick L. Bobko for Defendant and Appellant.

Roger Jon Diamond for Plaintiffs and Respondents.

**OPINION**

**CROSKEY, J.**—The City of Beverly Hills (City) appeals from an order granting Nightlife Partners, Ltd.; Entertainment Associates of L.A., Inc.; Déjà Vu Showgirls of Beverly Hills, LLC and Déjà Vu Consulting, Inc. (collectively Petitioners), a new administrative hearing. There is substantial

evidence to support the trial court's determination that Petitioners are entitled to a new hearing, and we therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND[1]

Petitioners operate a cabaret in City, pursuant to the adult entertainment regulatory permit (permit) required by City's municipal code. At all times relevant to this appeal, Petitioners and City were engaged in federal litigation, *Nightlife Partners, Ltd. v. City of Beverly Hills* (U.S. Dist. Ct. case No. CV 98-10266 RAP), related to City's regulation of adult entertainment. Assistant City Attorney Terence Boga (Boga) was one of the city attorneys litigating the federal lawsuit.[2]

City's municipal code required Petitioners to renew their permit every two years, and also required that a renewal application be submitted at least 30 days before the initial permit was to expire. In early 2001, Petitioners attempted to obtain from City an application form for renewal of their permit, but ran into difficulties obtaining the applicable form. City finally gave Petitioners an application form used for renewal of permits for "private clubs/public dancing"; City did not have a separate application form for renewal of adult entertainment permits.

On February 22, 2001, Petitioners submitted an application for renewal of their permit. Petitioners and City then engaged in a debate over whether, in fact, the application was complete. City, through Boga, took the position in letters to Petitioners that, for a renewal, Petitioners were required to submit exactly the same documents required for an application for a *new* permit (e.g., site plans and letters of justification). Petitioners took the position that neither the municipal code nor the application form required them to submit new copies of the same documents required by the initial application.

City refused to consider the application for renewal to be complete, and, on April 26, 2001, Donald Oblander, City's finance director, sent Petitioners a letter denying their renewal application, assertedly because the application was incomplete because of missing documents. The letter also advised

---

[1]We recite those facts, taken from the joint appendix (which includes the administrative record) that support the trial court's factual determinations. (See Discussion, pt. 1, *post.*) Because the issue on appeal primarily involves those facts related to the conduct of the administrative hearing, rather than to the circumstances leading up to that hearing, we do not detail the problems Petitioners allegedly suffered at the hands of local officials while attempting to renew their business permit, but simply summarize those claims.

[2]Boga is an attorney with Richards, Watson & Gershon (RWG). City's answer to Petitioner's federal complaint, dated March 8, 2001, listed Boga, Mitchell E. Abbott and Patrick K. Bobko as the RWG attorneys representing City.

Petitioners that, even if the application had been complete, it would have been denied because the cabaret did not comply with certain design and performance standards set by the municipal code. Therefore, as provided for by the municipal code, Petitioners filed an administrative appeal of the denial of their renewal application.

On June 28, 2001, Petitioners' administrative appeal was heard by David R. Holmquist (Holmquist), an attorney and City's risk manager. At the beginning of the hearing, Holmquist stated that he had never presided over such a hearing before, and then announced that "Seated next to me is Assistant City Attorney, Terence Boga, [who] will be advising me and assisting me as necessary in these proceedings." Boga being otherwise occupied as Holmquist's adviser, City's advocate at the hearing was William Litvak, an attorney hired for that purpose.

Boga sat next to Holmquist throughout the hearing, and the two men conferred from time to time, apparently in connection with evidentiary rulings and legal issues. Such communications were not transcribed by the reporter. Petitioners unsuccessfully objected both to the fact that the hearing officer was a city employee, and to Boga's role as the hearing officer's adviser.

During the hearing, Holmquist ruled, among other things, that (1) it was irrelevant that the form City provided to Petitioners did not require the documents that City subsequently held were required so as to conclude that their absence rendered the application incomplete, and (2) Petitioners were not allowed to present evidence of deliberate discrimination against adult entertainment businesses by showing that, of all the permitted businesses in City, only such adult entertainment businesses (of which Petitioner's cabaret was allegedly the only one) were required to go through the same process to renew a permit as to obtain an initial permit.

Holmquist rendered a decision denying Petitioners' appeal on September 5, 2001. Under City's municipal code, Petitioners could not appeal Holmquist's decision to any further administrative body. Therefore, on November 21, 2001, Petitioners filed a petition in the superior court for a writ of administrative mandate directing City to set aside the denial of the permit and to issue the required permit. The petition alleged, in relevant part, that the hearing was unfair, the hearing officer made improper evidentiary rulings, and that the procedures followed were unfair and violated Petitioners' rights to procedural due process.

In a declaration submitted in opposition to the petition, Holmquist declared that the opinion he rendered was his alone, and had been made

without consulting with any other city employee. He also denied that he was prejudiced or biased because of his status as a City employee. *Notably, however, his declaration entirely failed to respond to Petitioners' claim that Boga had advised and assisted him during the hearing in connection with making evidentiary rulings or determining legal issues.*[3]

After reviewing the administrative record and listening to argument, the trial court granted the petition, concluding that Petitioners' due process rights had been violated. It found that Boga had taken an "active and significant" part in Petitioners' unsuccessful application renewal process, and that when Petitioners sought administrative *review* of that process, Boga also appeared and participated in the administrative hearing by advising and assisting Holmquist, the hearing officer. It concluded that Boga's participation as the hearing officer's advisor during the administrative review process constituted "actual bias." Rather than ordering City to issue a renewal permit, as prayed for in the petition, it simply ordered City to provide Petitioners with a new hearing.

City filed a timely notice of appeal.

### CONTENTIONS ON APPEAL

City contends the trial court erred by setting aside its administrative decision because there were no "concrete facts" showing actual bias. It contends Boga's "advisory role" was legally permissible, and that Petitioners received a fair hearing that met due process requirements. Petitioners contend that there were "concrete facts" showing a risk of bias, that Boga's participation rendered the proceedings unfair, and that, in fact, they did not receive a fair hearing. We conclude that the issue is not whether there was actual bias, but whether the hearing met minimum constitutional standards of due process, and further conclude that it did not.

---

[3]The trial court did not admit this declaration, concluding that matters not before the administrative hearing officer were not admissible in a proceeding to review such administrative hearing pursuant to Code of Civil Procedure section 1094.5. However, the ultimate issue before the trial court here was not whether the administrative record supported the administrative decision, but whether the hearing was held before a neutral, unbiased and impartial hearing officer, that is, whether the hearing was fair.

As to such issue, Holmquist's declaration was relevant and admissible, under Code of Civil Procedure section 1094.5, subdivision (e), for the reasons discussed in Discussion part 2, *post.* We therefore treat the declaration as admissible evidence in connection with the appeal of the trial court's decision that the procedure used violated Petitioners' right to due process.

## DISCUSSION

### 1. *Standard of Review*

██ In the trial court, the standard of review depends on the nature of the right affected by the administrative decision. (See Code Civ. Proc., § 1094.5, subd. (c).)[4] In the appellate court, the appropriate standard of review is substantial evidence, regardless of the nature of the right involved. Thus, even in those cases where the trial court was required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824 [85 Cal.Rptr.2d 696, 977 P.2d 693].)

Here, the trial court did not review the facts and findings that supported Holmquist's decision to uphold City's denial of Petitioners' permit renewal application. Instead, it reviewed the facts related to how the hearing before Holmquist was conducted. Thus, on appeal it is the trial court's findings of fact related to that issue which we review. We apply the substantial evidence test to the evidence and findings that support the trial court's determination that the hearing process was fundamentally unfair.

The trial court's determination involves a mixed question of fact and law. To the extent there are conflicts in the evidence of what occurred at the hearing before Holmquist, we view the evidence in the light most favorable to the trial court's decision. We then apply a de novo review as to whether such facts support the trial court's conclusion of law that the hearing was unfair. (*Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1442 [282 Cal.Rptr. 819]; *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 387 [146 Cal.Rptr. 892].)

### 2. *There Is Substantial Evidence That Boga Acted as Holmquist's Adviser During the Hearing*

██ As noted above, we view any conflicts in the evidence in the light most favorable to the trial court's factual determinations. The only factual dispute here was whether, in fact, Boga actually advised and assisted Holmquist during the hearing. City points out that the administrative record does not show that Boga actually gave Holmquist any advice or assistance during the hearing. However, we take judicial notice of the fact (Evid. Code, § 452, subd. (g)) that communications between bench officers and their staff on matters of law and procedure are normally not reported. Thus, the absence of

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

any reported communications is not conclusive evidence that such advice and assistance did not take place.

In contrast, at the beginning of the hearing, Holmquist announced on the record that he was inexperienced, and would be advised and assisted during the hearing by Boga. This announcement, in and of itself, was sufficient evidence to support the trial court's conclusion that Boga did, in fact, advise and assist Holmquist. In addition, Holmquist's otherwise detailed declaration in opposition to the petition entirely failed to respond to Petitioners' allegations that Boga had counseled and advised him during the hearing. This omission in the face of such allegations created an inference that, in fact, Boga actually *did* advise and assist Holmquist during the hearing. (Evid. Code, § 1221 [evidence of a statement offered against a party is not made inadmissible by the hearsay rule if the statement is one of which the party, with knowledge of the content thereof, has by words or other conduct manifested his adoption or his belief in its truth]; see also *Alicia R. v. Timothy M.* (1994) 29 Cal.App.4th 1232, 1239 [34 Cal.Rptr.2d 868] [party failed to respond to an assertion of any obviously relevant fact, for example, a representation of the party's annual income offered in connection with appropriate child support, is made, despite an opportunity and motive to do so].) " 'This rule of evidence rests on that universal principle of human conduct, which leads us to repel an unfounded imputation, or claim . . .'[;] . . . the weight to be given the evidence depending upon how provocative the situation is to speech and how significant is the silence. [Citations.]" (*Baldarachi v. Leach* (1919) 44 Cal.App. 603, 606-607 [186 P. 1060], citations omitted; see also *Nungaray v. Pleasant Valley etc. Assn.* (1956) 142 Cal.App.2d 653, 666-667 [300 P.2d 285] and cases cited there [failure to deny the truth of a statement may constitute an admission by silence].)

While it is true that normally " ' "the review of administrative proceedings . . . is confined to the issues appearing in the record of that body as made out by the parties to the proceedings" ' " (*Green v. Board of Dental Examiners* (1996) 47 Cal.App.4th 786, 792 [55 Cal.Rptr.2d 140], italics omitted; § 1094.5, subd. (a)), it is also true that " ' "additional evidence, in a proper case, may be received." ' " (*Green v. Board of Dental Examiner, supra,* 47 Cal.App.4th at p. 792, italics omitted; § 1094.5, subd. (e).) As the United States Supreme Court in *Citizens to Preserve Overton Park v. Volpe* (1971) 401 U.S. 402, 420 [91 S.Ct. 814, 825, 28 L.Ed.2d 136] (*Overton*), noted when it refused to limit review to the administrative record, "since the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence . . . [¶] [t]he [trial] court may require the administrative officials who participated in the decision to give testimony explaining their action." While the particular factor favoring the admission

of such extrinsic evidence in *Overton* was that the administrative officers failed to render any formal findings, so that the court concluded that "it may be that the only way there can be effective judicial review is by examining the decision-makers themselves," (*ibid.* [91 S.Ct. at pp. 825-826]) the rationale applies equally well to a situation such as the one here, in which the issue is what off-the-record, ex parte communications, if any, the administrative decision maker him- or herself engaged in with an interested party during the hearing. (See also *City of Fairfield v. Superior Court* (1975) 14 Cal.3d 768, 777 [122 Cal.Rptr. 543, 537 P.2d 375] [citing *Overton* with approval].)

That this admission of such extrinsic evidence is permissible when the issue is whether the hearing was fair or not is manifested by section 1094.5, subdivision (e), which provides that the trial court may admit evidence that could not have been produced at the administrative hearing, and may itself take such evidence into consideration, rather than remanding the matter to the administrative tribunal, in cases in which it is authorized by law to exercise its independent judgment on the evidence. Where, as here, the issue is whether a fair administrative hearing was conducted, the independent judgment test does apply (*City of Fairfield v. Superior Court, supra,* 14 Cal.3d at p. 776), and the court is empowered to render its independent judgment on the basis of the administrative record plus such additional evidence as may be admitted under section 1094.5, subdivision (e). (*City of Fairfield v. Superior Court, supra,* 14 Cal.3d at p. 776; *Toyota of Visalia, Inc. v. New Motor Vehicle Bd.* (1987) 188 Cal.App.3d 872, 881 [233 Cal.Rptr. 708].)

While it is error, in the absence of a proper preliminary foundation showing that one of the exceptions noted in section 1094.5, subdivision (e) applies, for a trial court to permit the administrative record to be augmented with extrinsic evidence (*Toyota of Visalia, Inc. v. New Motor Vehicle Bd., supra,* 188 Cal.App.3d at p. 881), on the other hand, if one of the exceptions clearly applies, then it may be an abuse of discretion to refuse to admit relevant evidence. (*Pomona Valley Hospital Medical Center v. Superior Court* (1997) 55 Cal.App.4th 93, 101 [63 Cal.Rptr.2d 743]; *Armondo v. Department of Motor Vehicles* (1993) 15 Cal.App.4th 1174, 1180 [19 Cal.Rptr.2d 399].) The test is whether there has been a manifest abuse of discretion. (*Armondo v. Department of Motor Vehicles, supra,* 15 Cal.App.4th at p. 1180.)

Here, the issue was whether there had been procedural fairness during the hearing, specifically, whether Holmquist was biased and/or advised and assisted by Boga during the hearing. In such cases of administrative mandamus, the trial court may consider evidence not presented at the administrative hearing if the evidence addresses the petitioner's claim that he or she

was denied due process or a fair hearing at that hearing. (See, e.g., *Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1170, fn. 17 [56 Cal.Rptr.2d 223]; *Tiholiz v. Northridge Hospital Foundation* (1984) 151 Cal.App.3d 1197, 1204-1205 [199 Cal.Rptr. 338]; see generally *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 578-579 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

Holmquist's declaration was directly related to whether the hearing was fair. Furthermore, the trial court was required to exercise its independent judgment to decide such issue, and, under section 1094.5, subdivision (e), was empowered to admit relevant and admissible evidence on such issue. We therefore conclude that the trial court abused its discretion by refusing to admit Holmquist's declaration.

Accordingly, there is substantial evidence to support the trial court's conclusion that, in addition to taking an active and significant part in the renewal application process, Boga also appeared and participated in the administrative review of the denial of that application by advising and assisting Holmquist, the hearing officer.

### 3. *The Hearing Violated Petitioners' Procedural Due Process Rights*

The protections of procedural due process apply to administrative proceedings (*Richardson v. Perales* (1971) 402 U.S. 389, 401 [91 S.Ct. 1420, 1427, 28 L.Ed.2d 842]); the question is simply what process is due in a given circumstance. (*Morrissey v. Brewer* (1972) 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484]; see *Logan v. Zimmerman Brush Co.* (1982) 455 U.S. 422, 428-429 [102 S.Ct. 1148, 1153-1154, 71 L.Ed.2d 265].) Due process, however, *always* requires a relatively level playing field, the "constitutional floor" of a "fair trial in a fair tribunal," in other words, a fair hearing before a neutral or unbiased decision-maker. (*Bracy v. Gramley* (1997) 520 U.S. 899, 904-905 [117 S.Ct. 1793, 1797, 138 L.Ed.2d 97]; *Withrow v. Larkin* (1975) 421 U.S. 35, 46 [95 S.Ct. 1456, 1464, 43 L.Ed.2d 712] (*Withrow*).)

### a. *Due Process in Administrative Proceedings*

Just as in a judicial proceeding, due process in an administrative hearing also demands an *appearance* of fairness and the absence of even a *probability* of outside influence on the adjudication. In fact, the broad applicability of administrative hearings to the various rights and responsibilities of citizens and businesses, and the undeniable public interest in fair hearings in the administrative adjudication arena, militate in favor of assuring that such hearings are fair. As one commentator recently noted, " '[i]nescapably, administrative law and the administrative state impinge upon the public

more and more often[.] When driver's licenses, house remodeling, vacations at the beach or the mountains, clean air and water, and cigarettes are all impacted by administrative regulations, the high likelihood is that . . . [the] administrative law judge . . . [is] going to be the person who is conducting that pivotal, first level of judicial review[.]' " (Gillette, *Administrative Law Judges, Judicial Independence, and Judicial Review: Qui Custodiet Ipsos Custodes*, 20 J. Nat. Assn. Admin. L. Judges (2000) 95, 113, as quoted by Salkin, *Judging Ethics for Administrative Law Judges: Adoption of a Uniform Code of Judicial Conduct for the Administrative Judiciary*, 11 Widener J. Pub. L. (2002) 7, 8, fn 3.)

While the thrust of such commentary appears to be related to state-wide administrative agencies, administrative hearings at the local level, for example, before municipal and county boards, commissions and hearing officers, also have the same potential of impacting significant rights and of being the first level of adjudicatory review. (See, e.g., Salkin, *Judging Ethics for Administrative Law Judges: Adoption of a Uniform Code of Judicial Conduct for the Administrative Judiciary, supra,* 11 Widener J. Pub. L. at p. 10 & fn. 10, noting that during the 2001 Annual Meeting of the American Bar Association (ABA), the ABA's house of delegates passed resolution 101B. That resolution urged state *and* local governments to require that administrative judiciary members be accountable under provisions similar to the ABA Model Code of Judicial Conduct.)

b. *Impact of the Administrative Procedure Act*

█ Thus, although California's Administrative Procedure Act (APA) (Gov. Code, §§ 11340-11529) does not apply to hearings before local, as opposed to state, administrative agencies (see, e.g., *Tucker v. San Francisco Unified School Dist.* (1952) 111 Cal.App.2d 875, 883 [245 P.2d 597]), to the extent citizens generally are entitled to due process in the form of a fair trial before a fair tribunal, the provisions of the APA are helpful as indicating what the Legislature believes are the elements of a fair and carefully thought out system of procedure for use in administrative hearings. (*Tucker v. San Francisco Unified School Dist., supra,* 111 Cal.App.2d at p. 883.)

One of the basic tenets of the California APA, as well as the Model State Administrative Procedure Act, various state administrative procedure acts, and the federal Administrative Procedure Act is that, to promote both the appearance of fairness and the absence of even a probability of outside influence on administrative hearings, the *prosecutory* and, to a lesser extent, investigatory, aspects of administrative matters must be adequately separated from the adjudicatory function. (2 Am.Jur.2d (1994) Administrative Law,

§ 313, p. 325, "Separation of prosecutorial and adjudicatory functions.") While the combination of *investigative* and adjudicative functions standing alone *generally* does not create a due process violation in the absence of some showing of bias (*id.,* and cases cited at fn. 59, pp. 324-326), the same cannot be so readily said when prosecutory and adjudicative functions are too closely combined.

Thus, when, as here, "counsel . . . performs as an *advocate* in a given case [he or she] is generally precluded from *advising a decision-making body* in the same case." (2 Am.Jur.2d, *supra,* Administrative Law, § 313, p. 325, italics added, and cases cited at fn. 58, p. 325.) This is because "[t]he due process rule of overlapping functions in administrative disciplinary proceedings applies to prevent the participant from being in the position of reviewing his or her own decision or adjudging a person whom he or she has either charged or investigated." (*Id.* at fn. 58, p. 325, citing *Rhee v. El Camino Hospital Dist.* (1988) 201 Cal.App.3d 477, 499 [247 Cal.Rptr. 244].)

This concern over too close a connection between an advocate and the decision maker is reflected in various administrative procedure acts. Thus, the Model State Administrative Procedure Act and various state administrative procedure acts, including California's APA, provide for the separation of administrative functions by specifying that an employee engaged in prosecuting functions for an agency in a case may not, in the same or a factually related case, *participate or advise* in either the decision, or the agency *review's* of that decision, the only exception being that such employee may participate as a witness or counsel in public proceedings. (2 Am.Jur.2d, *supra,* Administrative Law, § 313, pp. 324-325, and authorities cited at fn. 60; Model State Administrative Procedure Act (1981) (U.L.A.) § 4-214; Gov. Code, §§ 11425.10, subd. (a)(4), 11425.30, subd. (a)(2).)[5] And the federal Administrative Procedure Act (5 U.S.C. §§ 551-559;

---

[5]California's APA is found at Government Code sections 11340 through 11529. Section 11425.10, subdivision (a)(4) specifically provides that the adjudicative function shall be separated from the investigative, prosecutorial and advocacy functions within the agency as provided in Government Code, section 11425.30. Section 11425.30, subdivision (a)(2) also prohibits an adjudicatory hearing officer from being "subject to the authority, direction, or discretion of a person who has served as investigator, prosecutor, or advocate in the proceeding or its preadjudicative stage."

Notably, given the facts here, Government Code section 11430.10, subdivision (a) also provides that while a proceeding is pending, there shall be no communication, direct or indirect, regarding any issue in the proceeding, to the presiding officer from an employee or representative of an agency that is a party, without notice and opportunity for all parties to participate in the communication. A communication from an employee or representative of an agency that is a party is not prohibited *if* it is made on the record at the hearing. (Gov. Code, § 11430.10, subd. (b).)

Here, not only was Holmquist subject to the direction of Boga, a person who had served as City's advocate in the proceeding's preadjudicative stage, and thus not a suitable hearing

§§ 701-706) provides that a hearing officer cannot be subject to the *supervision or direction* of an employee of the agency who is engaged in the performance of investigative or prosecuting tasks. (5 U.S.C. § 554(d)(2); 2 Am.Jur.2d Administrative Law, *supra*, § 313 and text at fn. 62, pp. 324-325.)

### c. *Howitt v. Superior Court*

California courts, too, recognize that the combination of prosecutorial and adjudicative functions is the most problematic combination for procedural due process purposes. (See, e.g., *Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1585 [5 Cal.Rptr.2d 196] (*Howitt*).) As the court in *Howitt*, noted, a prosecutor, by definition, is a partisan advocate for a particular position or point of view. (*Ibid.*) Such a role is inconsistent with the objectivity expected of administrative decision makers. (*Ibid.*) Accordingly, to permit an advocate for one party to act as the legal adviser for the decision maker creates a substantial risk that the advice given to the decision maker will be skewed (*ibid.*), particularly when the prosecutor serves as the decision maker's adviser in the same or a related proceeding. Then, "[t]o allow an advocate for one party to also act as counsel to the decision-maker creates the substantial risk that the advice given to the decision-maker, 'perhaps unconsciously' as we recognized in *Civil Service Commission v. Superior Court* [(1984)] 163 Cal.App.3d [70,] 78, fn. 1 [209 Cal.Rptr. 159], will be skewed." (*Ibid.*) Thus, an agency's staff counsel may prosecute a case before the agency when an independent hearing officer presides over the contested case hearing, *if* the prosecutor plays no role in the agency's deliberations. (*Id.* at p. 1586.) So, too, two lawyers from the same office could serve in dual capacities—one as prosecutor and one as legal adviser to the administrative agency— as long as they were effectively screened from each other. (*Ibid.*) However, it is improper for the same attorney who prosecutes the case to also serve as an adviser to the decision maker. (*Ibid.*)

The *Howitt* court did recognize that administrative procedures may depart, to some extent, "from the *pure* adversary model of a passive and disinterested tribunal hearing evidence and argument presented by partisan advocates," and yet still comply with constitutionally mandated due process when

---

officer, at least under the California APA, but the communications between Boga and Holmquist were not reported on the record, and thus would also have been prohibited under the APA.

This is not to say that the APA applies to local boards or municipalities. In fact, the APA does not apply to such entities (*Stewart v. San Mateo County* (1966) 246 Cal.App.2d 273, 289 [54 Cal.Rptr. 599].) However, when local boards act as judicial bodies of limited jurisdiction, even though they are not bound by technical rules of judicial procedure, they must afford the parties appearing before them a reasonably fair hearing. (*Corcoran v. S. F. etc. Retirement System* (1952) 114 Cal.App.2d 738, 745 [251 P.2d 59]; *Rogers v. Retirement Board* (1952) 109 Cal.App.2d 751, 758 [241 P.2d 611].)

used as the means for resolving disputes in " '[t]he incredible variety of administrative mechanisms [utilized] in this country. . . .' " (*Howitt, supra,* 3 Cal.App.4th at p. 1581, quoting *Withrow, supra,* 421 U.S. at p. 52 [95 S.Ct. at p. 1467].) As it noted, "[t]he mere fact that the decision-maker or its staff is a more active participant in the factfinding process—similar to the judge in European civil law systems—will not render an administrative procedure unconstitutional." (*Howitt, supra,* at p. 1581.)

However, a problem arises once an administrative agency "chooses to utilize the adversary model in large part but modifies it in a way which raises questions about the fairness of the resulting procedure." (*Howitt, supra,* 3 Cal.App.4th at p. 1581.) Thus, when both the agency and the citizen are represented by counsel at a formal hearing before a supposedly neutral decision maker who has not participated in the initial factfinding process of the agency's investigation and prosecution of a matter, and then, "in the midst of this seemingly adversary system," the same lawyer who represented the agency as advocate also advises the hearing officer with regard to its decision affecting that agency, "[t]he mental image comes to mind of a hearing in which [the agency's lawyer, while representing the agency,] raises an objection and then excuses himself from counsel table to consult with the [hearing officer] as to whether the objection should be sustained." (*Id.* at p. 1582.) What makes this scenario objectionable is that the "advocacy and decision-making roles are combined." (*Id.* at p. 1585, italics omitted.)

Here, this same objectionable overlapping of the role of advocate and decision maker occurred when Boga acted as both an advocate of City's position and as adviser to the supposedly neutral decision maker. It is true that the official role of City's advocate during the *review* of City's decision to deny the application was filled by Litvak, not Boga. However, Boga had been City's advocate in connection with the decision to deny the application. Thus, Boga's presence as Holmquist's adviser was the equivalent of trial counsel acting as an appellate court's adviser during the appellate court's review of the propriety of a lower court's judgment in favor of that counsel's client. It requires no citation of authority exactly on all fours with this fact pattern in order to justify the conclusion that Boga's role as adviser to the decision maker violated petitioners' right to due process. There was a clear *appearance* of unfairness and bias. This was sufficient to support the trial court's ruling.

### d. *Authorities Cited by City Are Distinguishable*

The cases cited by City for the proposition that Boga's dual roles comported with due process are distinguishable, because they do not involve this

same objectionable overlapping of *advocacy* and decisionmaking roles. In those cases, *12319 Corp. v. Business License Com.* (1982) 137 Cal.App.3d 54 [186 Cal.Rptr. 726], *BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205 [97 Cal.Rptr.2d 467], and *Kloepfer v. Commission on Judicial Performance* (1989) 49 Cal.3d 826 [264 Cal.Rptr. 100, 782 P.2d 239, 89 A.L.R.4th 235], the same attorney did not act as both a partisan advocate and as an adviser to the neutral decision maker.

In *12319 Corp. v. Business License Com., supra,* 137 Cal.App.3d 54, Los Angeles County required businesses to obtain a permit as a condition to offering entertainment of any sort. The plaintiff operated a nightclub, and under the ordinance, was required to obtain a permit from the business license commission. After numerous citizen complaints, the county sheriff filed an accusation against the plaintiff with the commission, and sought revocation of its business license. The sheriff's department was represented in legal matters by the office of the county counsel.

The revocation hearing was held before the business license commission, which was advised as to legal matters by Deputy County Counsel Tolnai. Tolnai did not act as an advocate for the plaintiff or the sheriff. However, he did assist the commission at one point by making sure that there was an adequate foundation for admission of a piece of documentary evidence that supported revocation. The plaintiff's license was revoked, so the plaintiff appealed the revocation to county's license appeals board, one member of which appeals board was required to have been designated by the office of the county counsel. The appeals board affirmed the revocation, and the plaintiff filed a petition for a writ of administrative mandamus, contending, among other things, that the facts made out a prima facie case of bias and conflict of interest against the office of the county counsel.

After losing at the trial court, the plaintiff appealed that decision, and the appellate court affirmed, concluding that the plaintiff had failed to offer any facts supporting its assertion of bias and prejudice or its suggestion that the various functions performed by the county counsel's office were not properly insulated from one another. (*12319 Corp. v. Business License Com., supra,* 137 Cal.App.3d at p. 61.) Tolnai had represented the commission in a neutral role as its legal adviser while the commission considered evidence from the plaintiff as well as from the sheriff. Then, after the commission determined to revoke the plaintiff's license, Tolnai appeared before the appeals board to seek to uphold the *commission's* decision—something he would have done regardless of whether that decision was for or against the plaintiff. (*Id.* at pp. 61-62.) The appellate court held that fact that Tolnai assisted with the examination of a witness did not effect a forfeiture of the

neutral position he held as counsel to the commission, because the total extent of such assistance consisted of inquiring whether the witness was familiar with the author's signature and, if so, whether the witness would recognize that signature. (*Id.* at p. 64.) The appellate court held that this assistance was not inconsistent with the role of a neutral adviser taking action to ensure that the evidence was properly before the commission, and did not amount to adoption of the prosecutorial role. (*Ibid.*)

The fact that different members of the county counsel's office each had a role in representing the prosecution before the commission, another role as legal adviser to the commission, or a third role as designator of a member of the board did not, in the absence of any facts to support the nightclub's assertion of bias or prejudice or lack of insulation of the various functions performed by the county counsel's office, constitute a prima facie case of bias or conflict of interest on the part of that office. Moreover, the appearance of a deputy county counsel before the board as an advocate against the nightclub after representing the commission in a neutral role did not establish a conflict of interest, in view of the fact that Tolnai's duty was to render neutral legal assistance to the commission and then to seek to uphold its decision before the board, regardless of whether that decision was for or against the nightclub.

Here, the roles of advocate for the agency and adviser to the decision maker were not insulated by being performed by different attorneys from a large office. Boga acted as both advocate for the initial denial of the renewal application, and then as adviser to the decision maker on the appeal of the decision for which he had advocated.

In *BreakZone Billiards v. City of Torrance, supra,* 81 Cal.App.4th 1205, the plaintiff sought a conditional use permit (CUP) to change the nature of its business from a youth-oriented billiard parlor to a much larger, adult-oriented facility that would sell alcoholic beverages. (*Id.* at pp. 1219-1220, 1248.) The city's planning commission approved the CUP, but one member of the city council appealed the commission's decision to the entire council as a whole, which considered the application de novo, and denied it. The plaintiff filed a petition for a writ of administrative mandamus, contending, among other things, that campaign contributions to the council members from his lessor (who had an interest in disapproval of his permit application) triggered a Government Code section 1090 violation. The trial court denied the petition (*BreakZone*, at p. 1220), and the plaintiff appealed. On appeal, among its other contentions, the plaintiff urged that the city attorney had improperly advocated on behalf of the city council member who had filed the appeal from the planning commission's grant of the CUP.

The reviewing court affirmed the trial court's decision to deny the petition. As to the plaintiff's claim that the city attorney had acted improperly advocated on behalf of the appeal and against the application for a CUP, thus adding to an appearance of bias and unfairness, the appellate court held that the record showed that the city attorney did not advocate any particular position, but merely acted as attorney for the counsel as a whole, making sure that evidence in support of the application, as well as against it, was presented. (*BreakZone Billiards v. City of Torrance, supra,* 81 Cal.App.4th at pp. 1241-1242.) In contrast, the record before us *does* show that Boga did not merely act as a neutral presenter of both sides of a question, because it shows that, in connection with the initial denial of the renewal application, he took the position that Petitioners' application was incomplete.

In *Kloepfer v. Commission on Judicial Performance, supra,* 49 Cal.3d 826, 833, the California Supreme Court held that the commission's combination of *investigative* and adjudicatory functions did not constitute a denial of due process. The commission's *staff* conducted the initial investigation, but once formal proceedings were instituted, the prosecutorial function shifted to examiners from the Office of the Attorney General. Members of the commission then considered the evidence presented by both sides before making a decision.

Thus, in *Kloepfer,* there was no allegation or evidence that there had been *any* combination of the functions of *advocacy* and adjudication in the same agency, let alone in the same attorney. Furthermore, additional insulation between the commission's investigatory and adjudicatory roles is provided by the mandated procedure whereby the commission is never the final decision maker, even if the judge fails to take any steps to appeal the commission's decision. Under this procedure, not only does the commission hear the recommendation of special masters appointed by the California Supreme Court before it makes its own decision, but then the commission itself simply *recommends* appropriate discipline to the Supreme Court. It is the California Supreme Court which is the final decision maker; it is required to independently review the evidence and assess its weight and relevance before pronouncing the final decision. As the court in *Kloepfer* pointed out, such a procedure avoids an unacceptable risk of bias either on the part of the commission, or on the part of the court as ultimate decision-maker. (*Kloepfer v. Commission on Judicial Performance, supra,* 49 Cal.3d at pp. 834-835.)

Here, in contrast, there was a confounding of the functions of *advocacy* and adjudication—a situation always fraught with more problems that when

there is some combination of *investigatory* and adjudicatory functions. Furthermore, these dual functions were not held by different sections of a single office, but by a *single individual.* And, unlike the situation in *Kloepfer,* there was no procedure here that automatically prevented the hearing officer's decision from being the final decision, absent some action (and expense) on the part of the Petitioners.

## CONCLUSION

The hearing here, at which Boga, City's advocate for the initial denial of the renewal application, acted as legal adviser to the hearing officer reviewing that denial, violated Petitioners' rights to due process. Accordingly the trial court did not err by ordering that City grant petitioners a new hearing.

However, to adequately protect Petitioners' due process rights, the trial court's order for a new trial should be modified to direct that the new hearing must be conducted by someone other than Holmquist, given that his role as a neutral arbitrator has been compromised in a manner which, practically speaking, cannot be undone. In addition, the order should also provide that the new hearing must be conducted in a manner consistent with the views expressed in this opinion—for example, the hearing officer should not be, nor be advised by, anyone who has served as City's advocate in this or any related case (e.g., *Nightlife Partners, Ltd. v. City of Beverly Hills* (U.S. Dist. Ct. case No. CV 98-10266 RAP)).

## DISPOSITION

The order appealed from is modified as follows. At the end of the second full paragraph on page 2 of the order, the following language shall be inserted:

Such new hearing shall not be conducted by David R. Holmquist, nor by any person who has served as City's advocate in this or any related case (e.g., *Nightlife Partners, Ltd. v. City of Beverly Hills* (U.S. Dist. Ct. case No. CV 98-10266 RAP)). Moreover, the hearing officer shall not be advised by any person who has served as City's advocate in this or any related case (e.g., *Nightlife Partners, Ltd. v. City of Beverly Hills,* (U.S. Dist. Ct. case No. CV 98-10266 RAP)).

As so modified, the order is affirmed. Petitioners are awarded their costs on appeal.

Klein, P. J., and Aldrich, J., concurred.