Filed 4/16/13

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| GLENN SABEY, | B239916 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS129042) |
| v. | |
| CITY OF POMONA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James C. Chalfant, Judge.  Reversed and remanded with directions.

Lackie, Dammeier & McGill and Michael A. Morguess for Plaintiff and Appellant.

McCunne & Harber and Kristine J. Exton for Defendant and Respondent.

_____

We hold that when a partner in a law firm represents a department within a city at an advisory arbitration regarding a personnel matter, and when the city's decisionmaking body later reviews that arbitrator's award for confirmation or rejection, the principles of due process prohibit the decision maker from being advised on the matter by a different partner from the same law firm. Because the law partners owe each other fiduciary duties the advisor partner is in the position of reviewing the efficacy of the advocate partner's work, there is "a clear *appearance* of unfairness and bias" (*Nightlife Partners, Ltd. v. City of Beverly Hills* (2005) 108 Cal.App.4th 81, 94 (*Nightlife*)) rendering the risk of actual bias too high to be constitutionally tolerable within the meaning of *Morongo Band of Mission Indians v. State Water Resources Control Bd.* (2009) 45 Cal.4th 731, 737 (*Morongo*). Accordingly, we reverse the trial court's decision denying the writ petition of appellant Glenn Sabey (Sabey)—a police officer who is fighting his termination from employment—in which he asserts a due process challenge to the decision of the City Council (City Council) of the City of Pomona (City) rejecting an arbitrator's award reinstating Sabey to his job.

## FACTS

*Sabey's misconduct*

Sabey dated Caroline Atarian (Atarian) for about a year. She was living in a condominium complex in Corona. It had a pool and Jacuzzi secured by a fence and a locked gate. Their relationship ended in 2000 or 2001. They had off and on contact for many years. In 2008, she saw him in the Jacuzzi and told him that he was trespassing. Atarian said she would call the police if she ever saw him in the complex again. He returned on five or 10 occasions and illegally used the Jacuzzi. To gain access to the Jacuzzi, he had to jump over the fence.

On April 1, 2008, Atarian saw Sabey by the pool and she called the Corona Police Department. When a responding Corona police officer asked for identification, Sabey appeared to be irritated. He said that his girlfriend lived in the complex, and implied he did not understand why the police had been called. Sabey acted as though he belonged at

2

the complex. At one point, Sabey said he had an appointment with Atarian to cut his hair. Soon after, he left.

Subsequently, a Corona police officer spoke to a resident at the complex named Cathy Lariviere. She said that in March she saw a man masturbating in the Jacuzzi. Lariviere identified the man as Sabey.

Sabey did not inform his watch commander of the incident or his contact with the Corona police.

Between April 2005 and December 2007, Sabey conducted unauthorized inquiries on his own name with the National Crime Information Center (NCIC) in violation of Justice Data Interface Controller (JDIC) rules. Sabey said he made the inquiries as a demonstration for trainee officers.

*Internal Affairs findings*

The Pomona Police Department (Department) internal affairs office investigated Sabey and found that he violated various provisions of the Department's policies and procedures by trespassing in violation of Penal Code section 602; by committing a lewd act in public in violation of Penal Code section 647, subdivision (a); by committing two misdemeanors and thereby impacting the way the public and another agency view the Department and law enforcement; by engaging in conduct that is unbecoming of a member of the Department, and which tends to reflect unfavorably upon the Department or its members; by failing to report activities that may result in criminal prosecution; by failing to report activities that have resulted in official contact by another law enforcement agency; and by violating JDIC rules by making inquiries on his own name with the NCIC.

*Notice of intent to terminate Sabey's employment; termination*

Sabey was sent notice of intent to terminate his employment due to violations of the Department's policies and procedures. After two prediscipline *Skelly* hearings (see *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194), the Chief of the Department, David Keetle, recommended that the city manager terminate Sabey's employment. The city manager followed Chief Keetle's recommendation.

3

*Advisory arbitration*

Pursuant to the memorandum of understanding between the City and the City of Pomona, Police Officers Association, Sabey requested an advisory arbitration to determine whether he was properly discharged by the Department for cause. The City was represented at the advisory arbitration by Debra L. Bray (Bray) from Liebert Cassidy Whitmore (LCW). In his Advisory Opinion and Award, the arbitrator sustained all of the findings made by internal affairs except as to lewd conduct. The award provided that Sabey's termination should be converted into a suspension without pay or benefits.

*The City Council's response to the Advisory Opinion and Award*

In July 2010, Peter Brown (Brown) of LCW was the City's Chief Labor Negotiator. As a result, he regularly met with the City Council in closed session at City Council meetings. After the City Council received the arbitrator's Advisory Opinion and Award, it asked Brown to be the City Council's legal advisor. At that point, LCW implemented an ethical wall between Bray and Brown. They did not talk to each other about the Sabey matter, and they were prevented from accessing each other's files.

On July 19, 2010, Brown met with the City Council in closed session. He presented on the Sabey matter. Through counsel, Sabey objected to attorneys from the same firm acting as an advocate for the Department and as a legal advisor to the City Council. On August 2, 2010, the City Council rendered a decision that adopted the arbitrator's factual findings but rejected the recommendation that Sabey's termination be converted into a suspension without pay or benefits. As a result, Sabey's termination from employment was made final.

*The writ petition; the motion*

Sabey filed a petition pursuant to Code of Civil Procedure sections 1094.5 and 1085. According to Sabey, he was denied due process of law and a fair hearing because, inter alia, "[he] was terminated by a decision making body that received legal advice regarding this matter prior to deciding whether to review the [arbitrator's decision] from the law partner of the attorney who represented the Department prior to and at the [arbitration]."

4

In his follow up motion, Sabey additionally argued that the penalty of termination was an abuse of discretion.

The petition for writ of mandate was denied.

This timely appeal followed.

## DISCUSSION

### I. The Principles of Due Process; Standard of Review.

When "an administrative agency conducts adjudicative proceedings, the constitutional guarantee of due process of law requires a fair tribunal." (*Morongo*, *supra*, 45 Cal.4th at p. 737.) A tribunal is not fair unless "the judge or other decision maker is free of bias for or against a party. [Citations.]" (*Ibid*.) Absent a financial interest in the outcome, an adjudicator in an administrative proceeding is presumed impartial. (*Ibid*.) To show a "violation of [the] due process guarantee," a party must prove either actual bias or that the situation is one "'in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' [Citation.]" (*Ibid*.)

We independently review whether the facts support the trial court's conclusion of law that the hearing was fair. (*Nightlife*, *supra*, 108 Cal.App.4th at p. 87.)

### II. Brown's Role as an Advisor to the City Council Violated Sabey's Right to Due Process.

Case law establishes that an attorney cannot act as both an advocate for an agency and then as an advisor to the decision maker who reviews the result that the advocate achieved. (*Midstate Theatres, Inc. v. County of Stanislaus* (1976) 55 Cal.App.3d 864 [the same lawyer cannot represent the county assessor and advise the board of equalization in the same proceeding].) In *Nightlife*, for example, the court held that the due process rights of a permit applicant were violated when the same attorney who advised the city that the application was insufficient later advised the hearing officer at the ensuing administrative appeal. (*Nightlife*, *supra*, 108 Cal.App.4th at pp. 84–85.) The court noted that "'[t]he due process rule of overlapping functions in administrative disciplinary proceedings applies to prevent the participant from being in the position of reviewing his

5

or her own decision or adjudging a person whom he or she has either charged or investigated.' [Citations.]" (*Id*. at p. 92.) In *Quintero v. City of Santa Ana* (2003) 114 Cal.App.4th 810 (*Quintero*), overruled in part by *Morongo*, *supra*, 45 Cal.4th at p. 740, the court held that a hearing before a city's personnel board was unfair because the deputy city attorney representing the city in a discharge case concurrently represented the Board on civil matters and otherwise had an ongoing relationship with it. In the *Quintero* court's view, the deputy city attorney's "other interactions with the Board [gave] the appearance of bias and unfairness and suggest the probability of his influence on the Board." (*Quintero, supra,* at p. 814.)

In contrast, "[p]erformance of both roles by the same law office is appropriate . . . if there are assurances that the adviser for the decision maker is screened from any inappropriate contact with the advocate." (*Howitt v. Superior Court* (1992) 3 Cal.App.4th 1575, 1586 (*Howitt*) [applying the rule to two lawyers from the same county counsel's office].) The burden of providing the assurances rests with the law office performing the dual roles. (*Id*. at pp. 1586–1587.)

To our knowledge, the *Howitt* rule has been applied only to government lawyers. The question presented is whether the *Howitt* rule applies to partners from a private law firm who are fulfilling the advocacy and advisory roles of government lawyers on a particular case. The answer is no.

As a partner in LCW, Brown owed both Bray and LCW the fiduciary duties of loyalty and care. (9 Witkin, Summary of Cal. Law (10th ed. 2005) Partnership, § 30, pp. 604-606.) Consequently, when Brown advised the City Council, he was in the position of reviewing the result achieved by his fiduciary.[1] In our view, this creates an

---

[1]    Below, the parties and the trial court assumed that Brown gave the City Council substantive advice. In his declaration, Brown stated that the "[City Council] had me present" on the Sabey matter. He provided no detail. The trial court sustained an attorney-client privilege objection to an e-mail in which Brown identified the specific advice that he actually gave. Thus, we have no admissible evidence regarding the contents of the advice that Brown provided. On appeal, the parties proceed as though Brown gave substantive advice that impacted the City Council's decision on the merits of

appearance of unfairness and bias.  (*Nightlife*, *supra*, 108 Cal.App.4th at p. 94.)  As a result, under *Morongo*, the risk of Brown providing the City Council with biased advice and thereby tainting its decisionmaking process was too high to be acceptable under constitutional principles.  By so holding, we do not suggest that Brown intentionally skewed his advice to promote the position Bray advocated at the arbitration.  Rather, we acknowledge that bias can be unwitting.  We also acknowledge that whenever a person serves two masters who have potentially conflicting interests, it is impossible to peer into the depths of that person's soul to determine the purity of his or her words and actions.  Thus, Brown's role in presenting to the City Council on the Sabey matter had the unavoidable consequence of destroying the appearance of a fair proceeding.

The City contends that the *Howitt* rule should apply because, in the context of this case, there is no difference between government lawyers and partners from a private law firm acting as government lawyers.  We disagree.  Two government lawyers do not owe each other fiduciary duties.  If they are properly screened from each other, there is no reason to suspect that the advisor to the decision maker will try to promote the result desired by the advocate.  Because they are fiduciaries, the same cannot be said of partners in a private law firm.  Also, partners in a law firm have incentive to build the reputation of their firm so that it will be profitable in the future by obtaining new and repeat business.  It is therefore logical to presume that a partner would want to make another partner look good by seeking—consciously or unconsciously—to validate the job done by that partner.  Government lawyers do not have the same considerations.  Thus, there is good reason not to apply *Howitt*.

Sabey's termination.  We accept the parties' assumption as an accurate reflection of what transpired.  (*DeRose v. Carswell* (1987) 196 Cal.App.3d 1011, 1019, fn. 3 [briefs and arguments are "'reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party'"].)  Too, the City cannot hide behind the attorney-client privilege and disclaim that Brown provided substantive advice on the merits during the City Council's closed session meeting.

7

According to the City, it is a fallacy to suggest that Brown would choose to support the result sought by Bray rather than give appropriate legal advice. There are several problems with this assertion. First, the City Council was vested with discretion in deciding whether to adopt or reject, in whole or in part, the arbitrator's Advisory Opinion and Award. Due to the City Council's discretionary power, Brown could have couched his advice in many different ways, and he could have brought various considerations to bear. Because this is not a situation in which there was one right answer and therefore one right piece of advice, there is a likelihood that if Brown's advice had been biased, that bias would have been masked. In other words, the bias would not necessarily appear on the face of the advice. This is all the more reason why the situation at bar does not satisfy the dictates of due process. Second, the City is wrong insofar as it suggests that we must examine Brown's actual motives. Our holding is premised solely on the appearance of unfairness and bias.

Finally, the City suggests it would be bad law to limit *Howitt* to government lawyers because (1) it would create confusion over the different rules applicable to government attorneys and private attorneys; and (2) it would prohibit the growth of law firms and terminate existing client relationships. We do not perceive a risk of confusion. The rule we announce is simple. Agencies are barred from using a partner in a law firm as an advocate in a contested matter and another partner from the same law firm as an advisor to the decision maker in the same matter. It is true that agencies and law firms will have to adjust to the rule we announce today, but that is the cost of due process. We cannot accept the City's suggestion that the due process rights of a participant in an administrative proceeding must bend to the interests of a private law firm that is appearing as advocate and advisor. That would be a perverse result, and one which is antithetical to the federal Constitution.

## III. The Remedy.

In general, if a party has not received a proper administrative hearing, the matter is remanded back to the agency to provide "a full and fair hearing." (*English v. City of Long Beach* (1950) 35 Cal.2d 155, 160; *National Auto & Cas. Ins. Co. v. Downey* (1950)

8

98 Cal.App.2d 586, 594 ["Where an administrative agency has not conducted a hearing properly, or has committed error of law, or if the evidence is insufficient to support the findings, and it is still possible under the circumstances for the agency to exercise its discretion, the court should remand the matter to the agency for further consideration"].) But if the decision maker "has become personally 'embroiled' in the controversy to be decided," then the decision maker must be disqualified from further participation in the matter. (*Mennig v. City Council* (1978) 86 Cal.App.3d 341, 351.) In that situation, it is appropriate to allow the recommendation of an inferior decision maker to stand as the final decision. (*Id*. at pp. 351–352 [because the city council was personally embroiled in the termination of the Chief of Police, the recommendation of the civil service commission converting the termination into a 60-day suspension was affirmed as the final decision].)

The question here is whether the City Council can exercise its discretion without being influenced by Brown's advice. Sabey argues that it cannot, and that the Advisory Opinion and Award must be confirmed as the final administrative decision. But there is no evidence that the City Council is personally embroiled in the termination of Sabey's employment, or that it is otherwise incapable of proceeding in a fair manner. We conclude that the matter should be remanded back to the City Council for further consideration with the proviso that it must obtain independent legal advice to eliminate the taint of Brown's involvement. If the City Council does not obtain independent legal advice and review the arbitration in light of that new advice, then the Advisory Opinion and Award shall become final.

Sabey suggests that the Advisory Opinion and Award should automatically become the final decision because the City Council failed to conduct a proper review of it within the 45 days allotted by the memorandum of understanding. We disagree. The City Council completed its review and rendered a decision in a timely manner. Sabey is the one who wishes to undo what was already done. He cannot be heard to complain that that time has expired on the City Council's right to make a decision. Notably, he cited no law in support of this contention. We deem the argument waived because "[i]t is not our

9

responsibility to develop an appellant's argument." (*Alvarez v. Jacmar Pacific Pizza Corp.* (2002) 100 Cal.App.4th 1190, 1206, fn. 11.)

In the alternative, Sabey argues that the City Council should be disqualified from hearing the matter and that it should be remanded to a different adjudicatory body. But he failed to identify a different adjudicatory body that has the power to act in the City Council's stead. This argument is waived, too.

All other issues raised by the parties are moot.

## DISPOSITION

The judgment is reversed and remanded with directions to the trial court to refer the matter back to the City Council for further consideration in light of independent legal advice. For this purpose, the clock is reset under the memorandum of understanding. Thus, the City Council shall have the time allowed under the memorandum of understanding for issuing a decision. If the City Council declines to review the arbitration record in light of independent legal advice and render a decision within the prescribed time, the Advisory Opinion and Award shall become final. Sabey shall recover his costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>**.


_____, J.
       ASHMANN-GERST


We concur:


_____, P. J.     _____, J.[*]
     BOREN                        FERNS

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.