# IN THE SUPREME COURT OF IOWA

No. 06–1542 & 07–0895

Filed November 13, 2009

**DAVID BOTSKO, D.M.D.,**

Appellant,

vs.

**DAVENPORT CIVIL RIGHTS COMMISSION**
and **INGELORE NABB,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Bobbi Alpers (final ruling) and Mark J. Smith (rulings regarding the production of public records), Judges.

Petitioner appeals agency action finding sexual harassment, alleging a violation of procedural due process and an erroneous award of attorneys' fees. **DECISION OF THE COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

Richard A. Davidson and Thomas D. Waterman of Lane & Waterman, Davenport, for appellant.

Judith J. Morrell, Davenport, for appellee commission.

Dorothy A. O'Brien of Dorothy A. O'Brien, P.L.C., Davenport, for appellee Nabb.

**APPEL**, **Justice.**

Ingelore Nabb filed a harassment complaint with the Davenport Civil Rights Commission alleging that her employer, dentist David Botsko, maintained a hostile work environment. Due to the discriminatory behavior, Nabb claimed she was constructively discharged from her position as a dental assistant. The commission found for Nabb, awarding her compensatory and emotional distress damages and attorneys' fees and costs. After affirmances at the district court and court of appeals, we granted further review to consider: (1) whether the district court erred in affirming the commission's award of attorneys' fees and in awarding Nabb additional attorneys' fees on appeal, (2) whether the district court erred in affirming the commission's holding that it was authorized to hold closed deliberative sessions, and (3) whether the district court erred in rejecting Botsko's procedural due process claim.

## I. Background Facts and Prior Proceedings.

Nabb filed a complaint alleging that her employer, Botsko, maintained a hostile work environment and constructively discharged her from employment. An administrative law judge (ALJ) originally issued a proposed decision in favor of Botsko. The ALJ concluded that while Nabb was subjected to an unpleasant and disagreeable work environment, she did not establish a claim of harassment based on age, gender, or national origin.

The commission reviewed the recommended decision of the ALJ in two closed-door meetings. After reviewing the record, the commission adopted the factual and credibility findings of the ALJ, but came to a different conclusion with respect to Nabb's claim of sexual harassment. The commission determined that the conduct complained of was "based on sex" and unwelcomed. The commission further concluded that Nabb

established a hostile work environment based on sex and that she was constructively discharged as a result. The commission awarded Nabb $5000 in emotional distress damages, $20,000 in compensatory damages, attorneys' fees in the amount of $30,081.86, and commission costs of $2935.70.

Botsko filed a petition for judicial review. Among other things, Botsko challenged the findings of the commission as not supported by substantial evidence, claimed that the commission did not properly honor the ALJ's credibility determinations, asserted that the award of attorneys' fees was not authorized by statute, argued that the commission's closed-door deliberations were unlawful, and claimed that his right to procedural due process was violated when the executive director of the commission, Judith Morrell, assisted the petitioner at the hearing and then proceeded to advise the commission regarding the proper disposition of the case.

After much procedural wrangling, including two remands for additional fact finding by the commission, the district court upheld the decision of the commission in its entirety. Botsko appealed.

We transferred the case to the court of appeals. The court of appeals affirmed the district court judgment. We granted further review. When this court grants further review, it may in its discretion limit its opinion to selected issues or may address all issues presented on appeal. *In re Marriage of Ricklefs*, 726 N.W.2d 359, 361–62 (Iowa 2007). In this case, we consider only the issues related to attorneys' fees, the lawfulness of the closed-door meetings to deliberate, and aspects of Botsko's procedural due process challenge.

## II. Standard of Review.

Although the commission is not an agency within the meaning of the Iowa Administrative Procedure Act (IAPA), Iowa Code chapter 17A (1999), both parties agreed that this court's review is determined by the standards set forth in section 17A.19(8). The legislature has directed that a final decision of a municipal civil rights commission is reviewable to the same extent as a final decision of the Iowa Civil Rights Commission. *See* Iowa Code § 216.19; *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n,* 672 N.W.2d 733, 740 (Iowa 2003).

As a result, a reviewing court should reverse the commission's decision only when it is "[i]n violation of constitutional or statutory provisions," "[a]ffected by other error of law," or "unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole[.]" Iowa Code § 17A.19(8)(*a*), (*e*), (*f*). To the extent the court is called upon to determine constitutional issues raised in the administrative proceeding, our review is de novo. *Drake Univ. v. Davis,* 769 N.W.2d 176, 181 (Iowa 2009).

## III. Award of Attorneys' Fees.

Botsko claims that the district court erred in affirming the commission's award of attorneys' fees to Nabb in the amount of $30,081.86.[1] Botsko notes that the Davenport Municipal Code, at the time relevant to these proceedings,[2] did not specifically authorize an award of attorneys' fees, but instead provided only that parties may be

---

[1]Following the district court's affirmance of the commission's decision, Nabb filed an application for appellate attorneys' fees. Over Botsko's objection, the district court awarded Nabb an additional $26,946. Botsko appealed. That appeal has been consolidated with this case. Our discussion on the attorneys' fees issue thus applies to both the initial award of $30,081.86 and the subsequent award of $26,946.

[2]We note that the Davenport Municipal Code has since been amended to allow for an award of "reasonable attorney fees." Davenport Mun. Code § 2.58.175(A)(8).

represented by counsel in proceedings before the commission "at their own expense." Davenport Mun. Code § 2.58.170(F). He asserts that in the absence of a statutory provision authorizing attorneys' fees, a party has no right to recover attorneys' fees as part of a damages award.

Nabb conversely argues that Botsko misinterprets the ordinance. First, she claims the provision authorizing a party to be represented by counsel "at their own expense" applies solely to administrative hearings and does not restrict fee-shifting as a form of relief. Second, Nabb points to other sections of the Davenport ordinance to support her claim for attorneys' fees. She notes the ordinance is designed to provide a means for executing the policies within the Iowa Civil Rights Act. *Id.* § 2.58.010. Under the Iowa Civil Rights Act, a party may be awarded "reasonable attorney fees." Iowa Code § 216.15(8)(*a*)(8). Nabb concludes that because the ordinance is designed to provide a means of executing the policies of the Iowa Civil Rights Act, and the Iowa Civil Rights Act contains an explicit fee-shifting provision, a similar fee-shifting provision should be implied as part of the local ordinance.

We disagree. We have stated that because attorneys' fee awards are a derogation of the common law, they "are generally not recoverable as damages in the absence of a statute or a provision in a written contract." *Kent v. Employment Appeal Bd.*, 498 N.W.2d 687, 689 (Iowa 1993). Such statutory authorization must be expressed and "must come clearly within the terms of the statute." *Thorn v. Kelley*, 257 Iowa 719, 726, 134 N.W.2d 545, 548 (1965).

Our stringent approach to statutory attorneys' fees is reflected in *Telegraph Herald, Inc. v. City of Dubuque*, 297 N.W.2d 529, 536–37 (Iowa 1980), where we held that a statutory provision authorizing an award of attorneys' fees related to district court proceedings did not imply that

attorneys' fees on appeal could also be recovered. Our demanding approach is consistent with cases in other jurisdictions which reject awarding statutory attorneys' fees by implication and require express language. *See Comm'r of Envtl. Prot. v. Mellon,* 945 A.2d 464, 470 (Conn. 2008); *Vance v. Speakman,* 409 A.2d 1307, 1311 (Me. 1979); *Holland v. Wal-Mart Stores, Inc.,* 1 S.W.3d 91, 95 (Tex. 1999); *see also* Robert L. Rossi, *Attorneys' Fees* § 6:7, at 6–22 to 6–23 (3d ed. 2002) (noting where statutory provisions contain no language explicitly mentioning attorneys' fees, such fees are generally not authorized).

Iowa Code section 216.19 authorizes a city to adopt its own civil rights ordinance. *Dietz v. Dubuque Human Rights Comm'n,* 316 N.W.2d 859, 861 (Iowa 1982) (discussing the municipal authority to establish civil rights commissions under section 601A.19 now section 216.19). The relevant question, however, is not whether the state legislature has authorized a fee-shifting provision in a local ordinance enacted pursuant to section 216.19. Instead, the question is whether the ordinance enacted by the City of Davenport at the time of this proceeding contained an express provision clearly authorizing an award of attorneys' fees.

The local ordinance in this case fails to meet this test. While the Davenport ordinance declares that it provides a means for executing the policies within the Iowa Civil Rights Act, such generalized language is not a substitute for language expressly authorizing the payment of attorneys' fees to the prevailing party. While Nabb asserts that important policy objectives are advanced by awarding attorneys' fees in civil rights cases, we will not read into the ordinance a fee-shifting provision when the local legislative body did not approve one. As a result, Nabb is not entitled to an award of attorneys' fees in these proceedings.

## IV. Challenge to Closed Meetings.

Botsko claims that the commission improperly deliberated in closed meetings. According to Botsko, the commission has no statutory authority under the Iowa Open Meetings Law, Iowa Code chapter 21, to conduct its deliberations behind closed doors. Botsko concludes that in light of the lack of statutory authorization, his due process rights were violated because the process was fundamentally unfair. He further presses the argument by seeking disclosure of the tapes of the "illegal" closed sessions.

Nabb counters that the closed sessions were authorized by Iowa Code section 21.5(1)(*f*). This section of the Open Meetings Law provides that closed deliberations may be utilized "[t]o discuss the decision to be rendered in a contested case conducted according to the provisions of chapter 17A." Iowa Code § 21.5(1)(*f*).

It is true, of course, that a local civil rights commission is not an agency under the IAPA and thus the IAPA is not directly applicable. Iowa Code § 17A.2(1). The fact that a local civil rights commission is not explicitly subject to chapter 17A, however, is not determinative on the issue here. The precise question is whether the proceedings in this case before the commission were conducted "according to the provisions of chapter 17A," even if chapter 17A did not expressly govern the matter.

One of the common meanings of "accordance" is agreement or conformity. *Merriam-Webster's Collegiate Dictionary* 7 (10th ed. 2002). Courts interpreting the phrase "in accordance with" have relied upon this common definition in a variety of contexts. *See, e.g., Love v. Bd. of County Comm'rs*, 701 P.2d 1293, 1295 (Idaho 1985) (finding the phrase "in accordance" did not require a zoning ordinance to be an exact copy of the master plan, but rather required the ordinance to reflect the goals of

the plan in light of all the facts and circumstances); *Holmgren v. City of Lincoln*, 256 N.W.2d 686, 690 (Neb. 1977) (same); *Thomas Group, Inc. v. Wharton Senior Citizen Hous., Inc.*, 750 A.2d 743, 748 (N.J. 2000) (finding that the phrase "in accordance with the contract" in construction lien statute must be read sensibly and consistent with the statute's overall intent and thus requires parties to perform work under the contract in order to be entitled to a lien, but does not require that a party satisfy all the contract's terms and conditions).

Utilizing this common definition, we determine that section 21.5(1)(*f*) requires a contested case hearing to be conducted under procedures *consistent with,* but not an exact replica of, chapter 17A in order for its deliberations to meet the open meetings exception. Whether the commission's proceedings were conducted "in accordance with" chapter 17A must be determined "in light of all the relevant circumstances." *Mathew v. Mathew*, 209 N.W.2d 573, 578 (Iowa 1973).

As noted previously, Iowa Code section 216.19 requires cities to "maintain an independent local civil rights agency or commission consistent with commission rules adopted pursuant to chapter 17A." Iowa Code § 216.19. Local civil rights commissions cooperate with the Iowa Civil Rights Commission in the investigation and prosecution of civil rights actions. These commissions, therefore, largely pattern their procedures after the state commission and chapter 17A. For example, under the Davenport ordinance, a litigant has rights and responsibilities that are parallel to those provided by the contested case provisions of chapter 17A, including the right to notice, to counsel, and to an evidentiary hearing. Davenport Mun. Code § 2.58.170. The parties, moreover, concede that on appeal, the standards of review established by chapter 17A are applicable. As a result, we conclude that this local

proceeding amounts to "a contested case conducted according to the provisions of chapter 17A." Under Iowa Code section 21.5(1)(*f*), the commission acted lawfully when it conducted closed meetings to deliberate in this matter.

We next turn to the question of whether the otherwise lawful closed deliberations violate Botsko's right to procedural due process of law. We conclude statutorily-authorized closed meetings to conduct deliberations do not violate procedural due process rights. Juries, executive agency boards and commissions, and appellate courts engage in closed deliberations every day. The law is fiercely protective of the deliberative process of multi-member bodies in order to promote candid and uninhibited discussion which produces the give-and-take that is the hallmark of effective collective decisionmaking. *See Kholeif v. Bd. of Med. Exam'rs*, 497 N.W.2d 804, 806–07 (Iowa 1993) (noting the strong public policy reasons to avoid inquiry into mental processes of administrative decisionmakers). We find no procedural due process infirmity as a result of the closed deliberations in this case.

**V. Procedural Due Process Challenge Arising from the Conduct of the Director.**

**A. Introduction.** Botsko also challenges the role of Director Morrell in this proceeding as violating procedural due process under the Fourteenth Amendment of the United States Constitution and article I, section 9 of the Iowa Constitution.[3] He launches a two-pronged attack, objecting to the presence of Director Morrell during the commission's deliberations. The first challenge goes to Morrell's role in the

---

[3]While Botsko cites article I, section 9 of the Iowa Constitution, he does not make an argument that the Iowa due process clause should be interpreted differently than the Due Process Clause of the Fourteenth Amendment to the United States Constitution. We therefore assume that the standards of due process are the same under the state and federal constitutions. *State v. Feregrino*, 756 N.W.2d 700, 703 n.1 (Iowa 2008).

investigation of Nabb's claim, specifically when she participated in the initial finding of probable cause. The second challenge goes to Morrell's alleged role as an advocate for Nabb at the administrative hearing and in presenting a joint brief to this court.

Nabb counters Botsko's arguments by asserting that a paralegal, and not Morrell personally, investigated the case and made a recommendation to Morrell after completing her investigation. She further asserts there was no evidence that Morrell prosecuted the case, noting that under the ordinance, the duties and power of the director do not include prosecution. Davenport Mun. Code § 2.58.070.

She additionally asserts that Botsko failed to show actual bias sufficient to overcome the presumption of honesty and integrity by persons who serve as adjudicators. Nabb argues the undisputed evidence shows that Morrell had no vote in the deliberative process, did not tell anyone how to vote, and did not try to influence anyone's vote. Nabb finally argues that Morrell participated in the closed sessions solely to advise the commissioners if they had any questions, to talk with them about procedures, and to record their votes.

**B.** **Analytic Framework for Due Process Claims in Administrative Proceedings.** A party in an administrative proceeding is entitled to procedural due process. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). The question is generally not whether a party is entitled to due process, but rather what process is due in any particular proceeding. *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484, 494 (1972). Due process always involves, however, a constitutional floor of a " 'fair trial in a fair tribunal.' " *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S. Ct. 1456,

1464, 43 L. Ed. 2d 712, 723 (1975) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942, 946 (1955)).

The key United States Supreme Court case regarding procedural due process in the context of the conflicting roles of agency personnel is *Withrow v. Larkin*. In *Withrow*, the United States Supreme Court held that procedural due process is not denied where investigative and adjudicative functions were both housed within a medical examination agency. *Withrow*, 421 U.S. at 47–55, 95 S. Ct. at 1464–68, 43 L. Ed. 2d at 723–28. The Court generally embraced the notion that due process required basic fairness in an administrative proceeding and noted that in some situations, such as those involving pecuniary interest or demonstrated personal bias, "experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* at 47, 95 S. Ct. at 1464, 43 L. Ed. 2d at 723.

In contrast to these settings, however, the Court stated that a combination of investigative and adjudicative functions faces a much more difficult burden of persuasion. *Id.* When a party challenges on procedural due process grounds the combination of investigative and adjudicative processes within an agency,

> [i]t must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Id.* at 47, 95 S. Ct. at 1464, 43 L. Ed. 2d at 723–24.

The Court furthered observed in *Withrow* that the variety of administrative mechanisms in the country will not yield any single

organizing principle for procedural due process analysis. *Id.* at 51, 95 S. Ct. at 1466–67, 43 L. Ed. 2d at 726. Nonetheless, several of the principles articulated in *Withrow* have appeared consistently in the case law and appear to have general application.

First, the mere fact that investigative, prosecutorial, and adjudicative functions are combined within one agency does not give rise to a due process violation. *Morongo Band of Mission Indians v. State Water Res. Control Bd.*, 199 P.3d 1142, 1146 (Cal. 2009); *Pub. Employees' Ret. Sys. v. Stamps*, 898 So. 2d 664, 678 (Miss. 2005); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 847 (Tenn. 2008). Such combinations inhere in the very nature of the administrative process before an agency. *Dep't of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.*, 145 P.3d 462, 464 (Cal. 2006); *State ex rel. Martin-Erb v. Mo. Comm'n on Human Rights*, 77 S.W.3d 600, 610 (Mo. 2002). In addition, the mere fact that an agency adjudicator has a supervisory role over agency actors involved in the investigatory or prosecutorial functions of the agency does not establish a procedural due process claim. *R.A. Holman & Co. v. Sec. & Exch. Comm'n*, 366 F.2d 446, 452–53 (2d Cir. 1966).

Second, consistent with *Withrow*, there is a consensus in the case law that even where *investigative* and *adjudicative* functions are combined in a single individual or group of individuals, there is no due process violation based *solely* upon the overlapping investigatory and adjudicatory roles of agency actors. For instance, the mere knowledge or participation of an adjudicatory fact finder in a preliminary investigation does not taint the proceedings when there is a later evidentiary hearing before the agency on the merits of the case. *Fisher v. Iowa Bd. of Optometry Exam'rs*, 510 N.W.2d 873, 877 (Iowa 1994); *Wedergren v. Bd.*

*of Dirs.*, 307 N.W.2d 12, 17 (Iowa 1981). As noted by one appellate court, state administrators are assumed to be professionals capable of distinguishing between investigations to determine if a threshold requirement for commencing the action has been met and the actual factual adjudication of those actions. *Colquitt v. Rich Twp. High Sch. Dist. No. 227*, 699 N.E.2d 1109, 1114 (Ill. App. Ct. 1998); *see also Fisher*, 510 N.W.2d at 877.

In order to prove a procedural due process violation in the context of a combination of investigative and adjudicative roles, even in a single individual, the challenging party must bear the difficult burden of persuasion to overcome the presumption of honesty and integrity in those serving as adjudicators. *Fisher*, 510 N.W.2d at 877, *see also Cronin v. Town of Amesbury*, 895 F. Supp. 375, 387 (D. Mass. 1995); *Hartwig v. Bd. of Nursing*, 448 N.W.2d 321, 323 (Iowa 1989).

A more serious problem, however, is posed where the same person within an agency performs both *prosecutorial* and *adjudicative* roles. As noted by Michael Asimow, a leading authority on administrative law, the primary purpose of separating prosecutorial from adjudicative functions is to screen the decisionmaker from those who have a "will to win"—"a psychological commitment to achieving a particular result because of involvement on the agency's team." Michael Asimow, *When the Curtain Falls: Separation of Functions in the Federal Administrative Agencies*, 81 Colum. L. Rev. 759, 773 (1981) [hereinafter Asimow]. Richard J. Pierce, Jr. in his leading administrative law treatise also observed, "It is difficult for anyone who has worked long and hard to prove a proposition . . . to make the kind of dramatic change in psychological perspective necessary to assess that proposition objectively . . . ." 2 Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.9, at 681 (4th ed. 2002).

The distinction between combining prosecutorial rather than investigatory roles with adjudication in a single individual has been recognized by courts. The court in *Howitt v. Superior Court*, 5 Cal. Rptr. 2d 196 (Ct. App. 1992) observed:

> A different issue is presented, however, where *advocacy* and decision-making roles are combined. By definition, an advocate is a partisan for a particular client or point of view. The role is inconsistent with true objectivity, a constitutionally necessary characteristic of an adjudicator.

*Howitt*, 5 Cal. Rptr. 2d at 202. Many of these cases find that such a combination poses so great a risk that due process has been violated without a showing of actual prejudice. *See, e.g., Gonzales v. McEuen*, 435 F. Supp. 460, 465 (D.C. Cal. 1977); *Dorr v. Wyo. Bd. of Certified Pub. Accountants*, 21 P.3d 735, 745 (Wyo. 2001). The ordinary requirement of actual bias or prejudice in separation of functions challenges does not apply because the risk of impartiality is thought to be too great when an advocate with the "will to win" also has a role in the adjudication of the dispute. *Nightlife Partners v. City of Beverly Hills*, 133 Cal. Rptr. 2d 234, 246 (Ct. App. 2003). Other cases have finessed the issue of whether the appearance of impropriety alone is sufficient to result in a due process violation by finding the presence of actual prejudice. *See, e.g., Allen v. La. State Bd. of Dentistry*, 543 So. 2d 908, 915 n.15 (La. 1989).

At least one case, however, stands for the proposition that while an attorney who prosecuted charges and then accompanied a board to deliberate may have acted imprudently, the fact that the counsel cast no vote and the apparent absence of any substantial prejudice did not warrant reversal of the adjudication. *Weissman v. Bd. of Educ.*, 547 P.2d 1267, 1276 (Colo. 1976). The *Weissman* court advised in future cases that counsel who plays a role as an advocate should not take part in the deliberations of the board. *Id.* While some cases may allow one person

to combine prosecutorial and adjudicative roles, the context is generally one where swift decisionmaking is a necessity and the interests at stake are minimal. *See generally Goss v. Lopez,* 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975) (allowing principal to mete out student discipline).

The contours of procedural due process in an administrative proceeding, involving the combination of prosecutorial and adjudicative functions, were explored in depth in *Nightlife.* In *Nightlife,* the owner of an adult cabaret appealed a denial of a regulatory permit by city officials. *Nightlife,* 133 Cal. Rptr. 2d at 237–38. An assistant city attorney who participated in the city's decision to deny the permit then appeared at the appeal hearing, where the hearing officer stated that the assistant city attorney would advise him regarding the appeal. *Id.* at 238. The court in *Nightlife* ruled that the cabaret's due process rights were violated by the dual roles of the assistant city attorney. *Id.* at 239.

After stating the broad general principles of procedural due process, the *Nightlife* court emphasized that due process in the administrative setting required "the *appearance* of fairness and the absence of even a *probability* of outside influence on the adjudication." *Id.* at 242–43. In support of its contention that the "appearance of fairness" implicates due process concerns, the court cited provisions of the California Administrative Procedure Act, the Federal Administrative Procedure Act, and other state administrative procedure acts that provide for the separation of prosecutorial and adjudicatory functions. *Id.* at 244–45.

The *Nightlife* court recognized that the combination of investigative and adjudicative functions, standing alone, did not generally create a due process violation in the absence of some showing of bias. *Id.* at 243. The

court observed, however, that "the same cannot be so readily said when prosecutorial and adjudicative functions are too closely combined." *Id.* at 243–44. In analyzing the combination of prosecutorial and adjudicative functions, the *Nightlife* court stated,

> [T]o permit an advocate for one party to act as the legal advisor for the decision-maker creates a substantial risk that the advice given to the decision-maker will be skewed, particularly when the prosecutor serves as the decision-maker's advisor in the same or a related proceeding.

*Id.* at 245. As a result, the court concluded that it was improper for an attorney to serve as a partisan advocate and as a legal advisor to the neutral decision-maker. *Id.* at 248.

Even the *Nightlife* court noted, however, that the mere asking of questions by an agency lawyer in an administrative hearing did not amount to partisan activity. *Id.* at 247. For instance, in *12319 Corp. v. Business License Commission,* 186 Cal. Rptr. 726, 731 (Ct. App. 1982), a government lawyer in an administrative hearing asked whether a witness was familiar with a signature and whether the witness could recognize the signature on a document. The court held that the questioning was not inconsistent with the role of a neutral advisor taking action to ensure that the evidence was properly before the commission and did not amount to adoption of the prosecutorial role. *12319 Corp.,* 186 Cal. Rptr. at 731.

Determining whether an individual's actions amount to neutral participation or are prosecutorial, for due process purposes, is not always clear. Asimow, 81 Colum. L. Rev. at 776–77. As noted by Asimow, while it is possible to take the position that all participation of any kind in prosecution raises the problem, a strict approach is oversimplified and could be quite costly. *Id.* at 776. "Agency technical

staff is a limited and valuable resource" that should be available as a source of expertise to agency decisionmakers. *Id.*

As a result, Asimow questions whether the mere giving of technical advice to an adversary is sufficient participation in the prosecution to preclude an individual from later participation in the adjudication as an advisor. *Id.*; *see also Dittus v. N.D. Dep't of Transp.*, 502 N.W.2d 100, 103–04 (N.D. 1993) (offering of foundational exhibits in proceeding insufficient basis to preclude agency official from participating in adjudication). Additionally, the mere approval of the form of a draft order by a staffer who was an advocate may not be sufficient to trigger a procedural due process violation. *Richview Nursing Home v. Minn. Dep't of Pub. Welfare,* 354 N.W.2d 445, 460 (Minn. Ct. App. 1984).

A number of cases also hold that, like a judge in a judicial proceeding, neutral staff members of an agency may ask questions in an adjudicative proceeding in order to clarify the record without being regarded as a partisan advocate and violating due process if they subsequently participate in adjudicatory functions. *12319 Corp.*, 186 Cal. Rptr. at 731. In addition, the mere filing of a complaint by an executive director is considered ministerial in nature and does not give rise to a due process issue in the event the executive director participates in the final agency adjudication. *Eaves v. Bd. of Med. Exam'rs*, 467 N.W.2d 234, 236–37 (Iowa 1991); *see also Finer Foods Sales Co. v. Block*, 708 F.2d 774, 779–80 (D.C. Cir. 1983).

Finally, the involvement of agency staff in judicial proceedings after the agency has reached a final decision is not generally regarded as raising procedural due process problems. In this setting, the advocate is defending a final agency action that is unlikely to produce the same psychological commitment as when an agency staffer seeks to persuade

the agency on the merits. Asimow, 81 Colum. L. Rev. at 777; *Ceres Marine Terminal, Inc. v. Md. Port Admin.*, No. 94-01, 1999 WL 287321, *6–*12 (F.M.C. April 16, 1999) (finding participation in briefing before appellate court defending agency action not prosecution that engenders a "will to win" sufficient to raise procedural due process infirmity when combined with other agency roles).

On the other hand, as in *Nightlife*, when a staff member becomes involved in the plaintiffs' litigation strategy or assumes a personal commitment to a particular result, he or she becomes an adversary with the "will to win." Asimow, 81 Colum. L. Rev. at 778. In *Withrow* terminology, when an agency staffer functions as an advocate, experience teaches that the probability of actual bias is too high to allow the staffer to also participate in the adjudicative process. *See, e.g., Gonzales*, 435 F. Supp. at 464–65 (finding procedural due process violation without showing of bias where school district attorneys acted as prosecutors and then as legal advisors to the board in school expulsion matter); *Schmidt v. Indep. Sch. Dist. No. 1, Aitkin*, 349 N.W.2d 563, 568 (Minn. Ct. App. 1984) (finding procedural due process violation where counsel presented case for terminating teacher, advised board chairman on legal rulings, and drafted and presented the findings of fact and conclusions of law). As is often the case with respect to procedural due process, the question is one of line-drawing and balancing. *See generally Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

**C. Application.** We reject Botsko's claim that Morrell's mere participation in the probable cause finding and the deliberations of the commission violates due process. The fact that Morrell may have made an initial finding of probable cause in this matter does not necessarily give rise to a due process violation if she later participates as an advisor

in the commission's deliberations. Under *Withrow*, a party who contends that the participation of an agency staff member in investigatory and adjudicatory functions violated due process must overcome a presumption of honesty and integrity. *Withrow*, 421 U.S. at 47, 95 S. Ct. at 1464, 43 L. Ed. 2d at 723–24. The fact that Morrell had some involvement in the initial finding of probable cause and later participated in the deliberations is not sufficient to give rise to a due process violation in the absence of a demonstration of actual bias.

Botsko argues, however, that Morrell did not simply participate in the initial finding of probable cause and the agency's later deliberations. Botsko claims that Morrell was an *advocate* for Nabb at the administrative hearing. Botsko notes that Morrell introduced several exhibits into the record for jurisdictional purposes. She was also seated at counsel table with Nabb's attorney. Botsko further notes that during the evidentiary presentation, Morrell and Nabb's counsel engaged in numerous off-the-record consultations. Finally, Botsko asserts that Morrell joined Nabb's counsel in its brief to this court. The commission and the district court, however, found that Morrell did not improperly act as an advocate in the proceedings.

First, we are not troubled by the fact that Morrell entered several exhibits into the record for jurisdictional purposes. These actions related to uncontested matters that simply set the stage for the proceeding. These activities are the kind of marginal participation in the administrative process that do not give rise to the "will to win" that would unduly tilt the playing field when prosecutorial and adjudicatory functions are combined. *Dittus*, 502 N.W.2d at 103–04.

Second, we also are not concerned about Morrell's participation in the litigation after the agency made its final determination. Such post-

decision defense of agency action does not inject unacceptable risks of bias into the agency determination. *Ceres*, No. 94-01, 1999 WL 287321 at *6–*12.

Of more concern is the fact that Morrell sat at counsel table for the plaintiff and participated in off-the-record conferences with Nabb's private counsel at the close of testimony. While it is true that Morrell did not ask any questions directly of any witness, on at least one occasion, after discussions between Morrell and counsel for Nabb, counsel for Nabb asked additional questions, which led to Botsko's impeachment. Morrell did not engage in similar private conferences with counsel for Botsko. While the record does not indicate the nature of these conversations, the ALJ apparently believed that Morrell was participating in the prosecution of the case, observing at the close of evidence that the burden of proof was on "Ms. Greve [Nabb's attorney] or Ms. Morrell." If Morrell were a neutral observer, she would have no burden of proof.

Where it is undisputed that the director of an agency sits at counsel table with a complainant, confers with that counsel at the close of the testimony of witnesses, and does not object when the hearing officer suggests that she, along with counsel for the complainant, bears the burden of proof, we conclude, as a matter of law, that the director was engaged in advocacy on behalf of the complainant. That advocacy is of a sufficient nature to preclude her later participation in the adjudicatory process in the case under the due process clauses of the state and federal constitutions. *Nightlife*, 133 Cal. Rptr. 2d at 248. The combination of advocacy and adjudicative functions has the appearance of fundamental unfairness in the administrative process. *Id.* at 242–43. Further, because of the risk of injecting bias in the adjudicatory process, Botsko is not required to show actual prejudice. *Id.*

The commission, nevertheless, argues that Morrell did not perform as an advocate in the adjudicative stage of the proceeding. The commission points out that Morrell did nothing more than answer questions of the commissioners in its closed sessions. Further, affidavits from various commission members state that they made their findings independently. These arguments and declarations, however, provide this court with little comfort. An advocate can accomplish much by simply answering questions. Indeed, that is what happens in every case where there are oral arguments before this court, where a skilled advocate will answer the court's questions in terms as objective as possible as a means of convincing the court to adopt a client's position. We cannot accept the contention that Morrell, after assisting Nabb as a second-chair advocate, may retreat into the closed sessions of the agency to "answer questions."

**D. Remedy.** In light of the due process violation, the decision of the commission must be vacated and the case remanded for further proceedings. The commission may avoid the due process violation by submitting the case, on the record previously developed, to a disinterested quorum of current commission members. *See In the Matter of Broome County Dep't of Pub. Transp. v. New York State Div. of Human Rights*, 632 N.Y.S.2d 266, 267 (App. Div. 1995) (calling for remand for further proceedings before an impartial arbitrator in light of due process violation). In addition, the commission may explore the possibility under any applicable cooperation agreement of presenting the case before an untainted body of the Iowa Civil Rights Commission. *See* Iowa Code § 216.19(2), (3) (2009).

**VII. Conclusion.**

For the above reasons, the decision of the court of appeals is affirmed in part and vacated in part and the district court judgment is

affirmed in part and reversed in part. The case is remanded to the commission for further proceedings consistent with this opinion. Costs on appeal are taxed to the parties equally.

**DECISION OF THE COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except Baker, J., who takes no part.