# IN THE COURT OF APPEALS OF IOWA

No. 13-1628
Filed November 26, 2014

**MALIK JUWEID,**
　　　　Petitioner-Appellant,

**vs.**

**IOWA BOARD OF REGENTS, et al.,**
　　　　Respondent-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, Robert J. Blink, Judge.

　　Malik Juweid appeals the district court's ruling on judicial review that concluded he was not denied due process in the administrative proceedings. **AFFIRMED.**

　　Rockne O. Cole of Cole & Vondra, PC, Iowa City, for appellant.

　　Thomas J. Miller, Attorney General, and George A. Carroll, Assistant Attorney General, for appellee State.

　　Heard by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

Malik Juweid appeals the district court's ruling on judicial review that concluded he was not denied due process in the administrative proceedings. Juweid argues impermissible conflicts of interest denied him due process in the university disciplinary proceedings charging him with violations of its ethics and anti-harassment policies. He asserts University of Iowa President Sally Mason's contemporaneous role as an intermediate decision maker in university disciplinary proceedings and as a defendant in Juweid's civil suit against her constituted actual bias. He also maintains the assistant attorney general's role as legal advisor to the university in both proceedings was impermissible.

Juweid's claims he was denied due process as a result of conflicts of interest fail because he has neither overcome the presumption of honesty and integrity to which President Mason and Assistant Attorney General Carroll are entitled nor established actual conflicts of interest.

**I. Background Facts and Proceedings.**

Juweid was a tenured faculty member at the University of Iowa, Carver College of Medicine. He has published articles asserting the dangers of excessive use of PET-CT scans, particularly in children. One such article was published in March 2010. During the fall and summer of 2010, Juweid recommended reduction of what he considered excessive imaging at University of Iowa Hospitals and Clinics (UIHC). On October 28, 2010, he sent President Mason an email criticizing UIHC for failing to implement his recommendations and asking for an investigation of the overuse of imaging in children.

On January 12, 2011, University of Iowa Provost Tom Rice placed Juweid on administrative leave upon advice of the university's threat assessment team.[1]

On February 11, 2011, pursuant to provisions of the university's operations manual, Rice sent Juweid a written "Ethics Complaint—Notice of Charges" (hereinafter complaint). The complaint detailed twenty-eight instances of statements made in emails Juweid sent to numerous coworkers and university officials between February 8, 2010, and February 9, 2011, which allegedly "disparaged and attacked the character and integrity of colleagues at the University and other institutions" in violation of section 15.4 of the operations manual. That provision states in part, "In the exchange of criticism and ideas, [the faculty member] shows due respect for the rights of others to their opinion. He or she refrains from personal vilification . . . ." The complaint indicated Juweid "violated Section 15.4 by sending numerous prejudiced, insulting and inflammatory emails to colleagues," one of which was an October 27, 2010 email[2] to President Mason and others,

> under the subject line "NPR Fires Analyst for Saying Muslims Make Him Nervous—And what Does the University of Iowa Do?" You [Juweid] accused Gay Pelzer of defending Dr. Fajardo [the chairperson of the radiology department] whom you allege as having made comments that are anti-gay, anti-Arab, discriminatory to minorities and religious practices and retaliatory. You accuse University administration of retaliation and discrimination and state that it is "time to react, Dr. Mason, before this all hits the press, the Iowa and Federal Civil Rights Commissions, the Federal Equal Opportunity and Diversity office, the Arab-American Anti-Discrimination committee and other civil rights committees."

---

[1] Nothing in this record indicates any investigation of Juweid's conduct was instigated by President Mason.

[2] There is no evidence in this record as to whether President Mason read this email.

The complaint asserted Juweid's remarks in the numerous, listed emails—as well as his "abusive tone"—were "unprofessional, unnecessary, and embarrassing to yourself and the University." The complaint also cited a September 2008 agreement reached between Juweid and the then-associate provost in which Juweid promised not to communicate with colleagues using "racially pejorative terms in reference to the recipients." The February 2011 complaint indicated additional complaints about Juweid's workplace conduct were being investigated. Copies of the complaint were sent to the presiding officer of the faculty judicial commission, the vice president for medical affairs, the interim executive vice president and provost, the dean of the college of medicine, and the head of the radiology department.

On February 15, 2011, on the recommendation of Lois Geist, the associate dean of faculty affairs of the university's medical school, Rice filed disciplinary charges against Juweid alleging violation of the anti-harassment, disruptive behavior, and anti-retaliation policies of the university.

On April 22, 2011, academic investigator Linda McGuire recommended disciplinary proceedings continue on the anti-harassment and disruptive behavior grounds.

On May 6, 2011, Juweid filed a lawsuit against twenty-five defendants, including President Mason, alleging he was entitled to whistleblower protections and had been subjected to retaliation in violation of state and federal civil rights acts. (An amended petition was filed in August 2011.)[3] In part, Juweid sought a

---

[3] Juweid voluntarily dismissed this lawsuit (CVCV073326) without prejudice on November 1, 2012.

temporary injunction staying the disciplinary process while the civil action was pending.

On May 12, 2011, Juweid was sent another disciplinary complaint, which gave notice of charges that included violations of the university's anti-harassment, disruptive behavior, and professional ethics and academic responsibility policies, as well as a violation of the Health Insurance Portability and Accountability Act (HIPAA) (concerning protected health information). Again, copies were sent to the presiding officer of the faculty judicial commission, the vice president for medical affairs, the interim executive vice president and provost, the dean of the college of medicine, and the head of the radiology department.

Following operations manual procedures, a three-person faculty panel presided over a June 15, 2012 hearing[4] on the charges stated in the two complaints. Juweid was allowed the assistance of counsel but chose to represent himself. The university was represented by Assistant Attorney General George Carroll. While Juweid's argument refers to President Mason as a complaining witness, only three witnesses testified for the university: Dr. Geist, the Associate Dean of Faculty Affairs, and Peter Berkson and Jane Caton, two members of the university threat assessment team. Juweid was afforded the opportunity to cross-examine the witnesses. He also had the opportunity to call witnesses and present documentary evidence.

On July 23, 2012, the panel issued unanimous findings, conclusions, and recommendations. It found "clear and convincing evidence" that Juweid had

---

[4] Apparently, the hearing was continued numerous times for varying reasons.

repeatedly violated section 15.4 by failing to "avoid[] interference with [others'] work," engaging in "personal vilification," engaging in "threatening, intimidating, or abusive language," and engaging in "conduct that creates a hostile work environment." The panel also found Juweid had violated HIPAA. The panel recommended Juweid be dismissed from his tenured faculty position in the department of radiology and his employment be terminated.

On August 16, 2012, Juweid appealed the panel's decision, which would normally go to the university president, Mason. However, Juweid sought an "external adjudicator"

> due to the UI's flagrant violation of his procedural and substantive due process rights in this termination proceeding. The obvious conflict is that your own [Mason's] lawyer in our whistleblowing and civil rights lawsuit against you, George Carroll, is now submitting a brief to you, his client, asking you to determine that you did not retaliate against Dr. Juweid due to his whistleblowing activities. This is an obvious conflict of interest impairing Dr. Juweid's rights to an impartial appeal process.
> . . . .
> . . . You are now subject of a civil action as to whether you violated Dr. Juweid's rights under the Whistle Blower statute; Section 1983; and the 1st, 5th and 14th Amendments to the US Constitution. You cannot now possibly be called upon pass upon your own actions.

An "Academic Officer's Brief to President Mason Following Panel's Findings, Conclusions and Recommendations" was also submitted on August 16. It made no mention of the request for an external adjudicator.

On August 21, 2012, President Mason issued a letter stating, "I have reviewed the materials, findings and subsequent briefs filed in the matter of an Ethics Charge against Dr. Malik Juweid, and I accept the recommendations for sanctions. I direct that the panel's recommendations be implemented."

On October 2, 2012, Juweid appealed to the Iowa Board of Regents, challenging "all adverse factual findings and legal conclusions" of the panel's decision. He also alleged he was denied due process because of impermissible conflicts of interest (1) on the part of the assistant attorney general who argued the appeal to President Mason and represented President Mason in Juweid's civil action and (2) on President Mason's part because she was a defendant in the civil action and was the adjudicator in the disciplinary proceedings. He asked for a stay of the disciplinary decision, reversal of President Mason's decision, and the recusal of President Mason from considering his new agency administrative hearing.

The board of regents denied Juweid's motion to stay proceedings, rejecting his claims of impermissible conflicts of interest. With respect to Mason, the board concluded:

> For the purposes of the administrative proceeding President Mason is presumed unbiased, and Dr. Juweid carries the burden of proving otherwise. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). The simple fact that two proceedings are pending in two different forums is not, in and of itself, enough to establish bias. To find otherwise would permit an employee to interfere with established University disciplinary procedures simply by filing litigation against the decision-maker.

Addressing the claim as to the assistant attorney general, the board stated,

> Dr. Juweid has not demonstrated how Assistant Attorney General Carroll's defense of President Mason in the civil matter adversely affected his representation of the University in the disciplinary matter. While it is true that the final institutional decision rested with President Mason, Dr. Juweid has failed to present evidence tending to indicate that Assistant Attorney General Carroll's representation improperly influenced her decision or that of the Faculty Judicial Panel.

> On February 8, 2013, the board of regents denied Juweid's appeal.

Juweid then filed a petition for judicial review, again asserting the administrative procedures denied him of due process. While Juweid argued to the district court that President Mason was a "complaining witness" in the disciplinary proceeding, it was only in the sense that Juweid sent two emails to President Mason.[5] He contended that in order to bring a whistleblower action, he was required to "blow the whistle" to President Mason. The district court affirmed the agency action. Juweid appeals.

## II. Scope and Standard of Review.

Because constitutional issues are raised, our review is de novo. *Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 844 (Iowa 2009).

## III. Discussion.

Juweid asserts he was denied a fair trial in a fair tribunal due to conflicts of interest existing with the assistant attorney general and the university president.

Our supreme court has most recently addressed the framework for procedural due process claims in administrative proceedings in *Botsko*, 774 N.W.2d at 848-82. "A party in an administrative proceeding is entitled to procedural due process." *Id.* at 848. Due process always involves a constitutional floor of a "fair trial in a fair tribunal." *Id.* "[I]n some situations, such as those involving pecuniary interest or demonstrated personal bias, 'experience teaches that the probability of actual bias on the part of the judge or

---

[5] Only the October 27, 2011 email was mentioned in the disciplinary complaint. Provost Rice described that email as "accus[ing] University administration of retaliation and discrimination and state that it is 'time to react, Dr. Mason, before this all hits the press, the Iowa and Federal Civil Rights Commissions, the Federal Equal Opportunity and Diversity office, the Arab-American Anti-Discrimination committee and other civil rights committees.'"

decisionmaker is too high to be constitutionally tolerable.'" *Id.* (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).

"[T]he mere fact that investigative, prosecutorial, and adjudicative functions are combined within one agency does not give rise to a due process violation." *Id.* at 849. "[T]here is a consensus in the case law that even where *investigative* and *adjudicative* functions are combined in a single individual or group of individuals, there is no due process violation based *solely* upon the overlapping investigatory and adjudicatory roles of agency actors." *Id.* The *Botsko* court ruled, "In order to prove a procedural due process violation in the context of a combination of investigative and adjudicative roles, even in a single individual, the challenging party must bear the difficult burden of persuasion to overcome the presumption of honesty and integrity in those serving as adjudicators." *Id.* at 849.

Where, however, the same person within an agency performs both prosecutorial/advocacy and adjudicative roles, there may arise a "will to win," which creates a risk that due process has been violated so great that the "ordinary requirement of actual bias or prejudice in separation of functions challenges does not apply." *See id.*

**A. President Mason.** Juweid contends President Mason was both accuser and witness in the disciplinary action, as well as a civil defendant, potential criminal defendant, and adjudicator in his disciplinary action. He contends President Mason's impartiality to preside over his disciplinary proceedings "can reasonably be questioned" and he need not show actual bias

or prejudice because the conditions here created a "will to win" on the part of President Mason.

We are not persuaded by Juweid's attempts to fit the present circumstances into the exception to the general rule that he, as the challenging party, bears the burden of overcoming the presumption of honesty and integrity. *See id.* Juweid offers only bald assertions that President Mason was the "chief accuser/witness" in his disciplinary hearing,[6] that she had a pecuniary interest in the outcome of the civil suit,[7] and that the outcome of his civil action could subject President Mason to criminal liability.[8] We reject these unsubstantiated claims and agree with the reasoning of the board of regents:

> Dr. Juweid cites *Gibson v. Berryhill*, 411 U.S. 564 (1973), in support of his contention that President Mason was conflicted out of rendering a final institutional decision in his disciplinary matter. In *Gibson*, administrative action was initiated before the Alabama Board of Optometry challenging the licensure of a group of optometrists based on allegations related to the unlawful practice of optometry. 411 U.S. at 567. Prior to ruling, the Board of Optometry sued the individual optometrists and the company with whom they were associated citing the same issues that were raised in the administrative complaint. *Id.* at 568. Following a favorable ruling in district court, the Board of Optometry proceeded with the administrative complaint against the individual optometrists. *Id.* The individual optometrists filed suit alleging, essentially, that the Board could not act as a fair and impartial arbiter of the administrative complaint. *Id.* at 570.
> The District Court considered two distinct sources of possible bias. Given that the Board previously initiated suit on the

---

[6] Juweid points to his October 27, 2010 email to President Mason, which he claims "interjected President Mason as a witness in his disciplinary proceeding." But the email was written by Juweid, not Mason. Mason was not called as a witness in the disciplinary proceeding. The two administrative complaints mention emails Juweid sent to Mason, but this hardly transforms Mason into the "chief accuser/witness."

[7] Juweid cites 42 U.S.C. § 1983 in this regard, contending that because he sued Mason in her individual capacity, she was subject to personal liability, which in turn created a pecuniary interest in the outcome of the civil action.

[8] Here, he asserts that if Mason admitted retaliating against him in his whistleblower action, she would be admitting a simple misdemeanor.

same subject matter against the very optometrists whose licensure it was now tasked with reviewing, the court found potential bias based on prejudgment of the facts. *Id.* at 578. The court also found that that any action taken by the Board to suspend or revoke licensure could redound to the personal financial benefit of the Board members in that their decision could result in elimination of a large portion of practicing optometrists in the state. *Id.* In affirming the District Court, the Supreme Court only relied on the potential for pecuniary interest in the outcome of the administrative proceeding, although it recognized both avenues of potential bias. *Id.* at 578-79.

The matter presently at issue before the Board of Regents differs in two regards to the facts at issue in *Gibson*. In *Gibson*, the Board of Optometry previously initiated suit against the plaintiffs alleging professional violations substantially similar to those it was tasked with administratively reviewing, leading the court to conclude there was a possibility that the Board had already concluded the optometrists were engaged in illegal practice. *Id.* Neither President Mason nor the University sued Dr. Juweid prior to resolution of the institutional disciplinary charges filed against him. Rather, Dr. Juwied initiated suit against President Mason alleging violations of the Iowa Whistleblower Act and his constitutional rights while disciplinary proceedings were pending. . . . While the two complaints may have stemmed from Dr. Juweid's employment relationship with the University, the issues and allegations are not so substantially similar as to give rise to an inference of bias. There is nothing to indicate that President Mason prejudged the facts at issue in the disciplinary matter simply because Dr. Juweid filed suit against her in another forum.

Secondly, Dr. Juweid has presented no evidence indicating that President Mason had a personal financial interest in the outcome of the disciplinary proceeding. Dr. Juweid argues, without further explanation, "[a] favorable decision helped her civil case. An unfavorable one would have hurt her case. . . . The Supreme Court stated, "[i]t is sufficiently clear from our cases that those with substantial pecuniary interest in legal proceedings should not adjudicate these disputes." *Id.* at 579 (citations omitted). While President Mason may have an interest in the outcome of the civil proceeding, she is not the party responsible for adjudicating that dispute. Dr. Juweid is free to present whatever arguments he deems valuable regarding President Mason's institutional decision and the motivations behind it in his civil litigation, but the mere possibility that her decision may be introduced as evidence in another forum does not rise to the level of a substantial personal financial interest in the outcome of the disciplinary matter.

For the purposes of the administrative proceeding President Mason is presumed unbiased, and Dr. Juweid carries the burden of

proving otherwise. *Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982). The simple fact that two proceedings are pending in two different forums is not, in and of itself, enough to establish bias. To find otherwise would permit an employee to interfere with established University disciplinary procedures simply by filing litigation against the decision-maker. Dr. Juweid has not, at this time, presented sufficient evidence indicating a likelihood of success on the issue of bias under either of the factors considered in *Gibson*.

Juweid asserts his best defense in the agency disciplinary proceeding was his whistleblower defense, but he was unable to make that argument because President Mason refused to recuse herself. [9] The record belies this complaint— Juweid did argue to the faculty panel that his communications with colleagues, which were found to have violated section 15.4 of the operations manual, were justified due to the lack of action on his concerns about the overuse of imaging. The panel considered these contentions:

> Dr. Juweid claims that he has whistleblower status *(see, e.g., Dr. Juweid Post-Hearing Brief at 25)*. This claim appears to reside in his belief that he (Dr. Juweid) exposed incompetence on the part of his department chair . . . and that he exposed inappropriate medical procedures (in the form of excessive PET-CT scans being conducted on a young patient).
> 
> Neither of these factors [is] either mitigating or exculpatory. Dr. Juweid violated University and UIHC Policy in a number of ways as noted above. He could have pursued his concerns about his department chair without violating University and DUIC Policies, and he could have pursued his concerns about inappropriate medical procedures without violating UUIC policies. Therefore the validity or otherwise of his initial concerns does not mitigate any sanctions which might be considered.

---

[9] He also contended his communications were misunderstood due to cultural differences. The panel addressed this claim in its questions to witnesses.

The panel also addressed Juweid's claim that he currently suffered from post-traumatic stress syndrome. The panel stated, "Based on the medical reports, we cannot find that Dr. Juweid's behavior during the period in question (February of 2010 to May of 2011) was caused by post-traumatic stress syndrome."

Nothing in this record indicates President Mason prejudged the facts of Juweid's appeal following the unanimous recommendation of the faculty panel. Moreover, we observe that President Mason's decision was not the final agency action. Rather, the board of regents provided the final ruling, and Juweid makes no claim that the board of regents—which was also named as a party in his civil action—had a disqualifying conflict of interest. There is no evidence that President Mason was ever involved in the investigation, the decision to file the complaints against Juweid, litigation strategy, or assumed a personal commitment to a particular result. *See Botsko*, 774 N.W.2d at 851-52 (citing *Nightlife Partners v. City of Beverly Hills,* 133 Cal. Rptr. 2d 234, 246 (Cal. Ct. App. 2003)). Juweid has failed to overcome the presumption of honesty and integrity of President Mason in ruling on his administrative appeal. *See id.* at 849.

**B. Assistant Attorney General.** Relying on *Nightlife Partners*, Juweid also claims he was denied due process because Assistant Attorney General Carroll represented President Mason in the civil action and argued to her in the administrative proceedings. His reliance on *Nightlife Partners* is misplaced because in that case the impermissible conflict arose because the city attorney, who had insisted the petitioners must submit one type of application to renew their adult entertainment permit, also sat next to and advised the hearing officer throughout the administrative permit hearing—that is, that the attorney was not only an advocate but a de facto decision maker. *See* 133 Cal. Rptr. 2d at 238-39.

The *Nightlife Partners* court observed:

> This concern over too close a connection between an advocate and the decisionmaker is reflected in various administrative procedure acts. Thus, the Model State Administrative Procedure Act [(APA)] and various state administrative procedure acts, including California's APA, provide for the separation of administrative functions by specifying that an employee engaged in prosecuting functions for an agency in a case may not, in the same or a factually related case, *participate or advise* in either the decision, or the agency *reviews* of that decision, the only exception being that such employee may participate as a witness or counsel in public proceedings.

133 Cal. Rptr. 2d at 244.

In *Botsko*, an employer was challenging the fairness of the hearing it received before the city's civil rights commission, which had found the employer had discriminated against an employee. 774 N.W.2d at 843. The supreme court did not find it troubling that the executive director of the civil rights commission, Judith Morrell, made an initial finding of probable cause and later participated as advisor in the civil rights commission's deliberations. *Id.* at 852. This was determined "not sufficient to give rise to a due process violation in the absence of a demonstration of actual prejudice." *Id.* Nor was the court concerned about Morrell's "participation in the litigation after the agency made its final determination. Such post-decision defense of agency action does not inject unacceptable risks of bias into the agency determination."[10] *Id.* at 853.

---

[10] The court was concerned, however, that Morrell "sat at counsel table for the [employee] and participated in off-the record conferences with [the employee's] private counsel at the close of testimony." *Botsko*, 774 N.W.2d at 853. The court concluded,

> Where it is undisputed that the director of an agency sits at counsel table with a complainant, confers with that counsel at the close of the testimony of witnesses, and does not object when the hearing officer suggests that she, along with counsel for the complainant, bears the burden of proof, we conclude, as a matter of law, that the director was engaged in advocacy on behalf of the complainant. That advocacy is of a sufficient nature to preclude her later participation in the adjudicatory

Here Attorney Carroll participated as counsel in public proceedings. *See Nightlife Partners*, 133 Cal. Rptr. 2d at 244. There is nothing in this record indicating he acted as an impermissible advisor to President Mason in the appellate decision. In *Nightlife Partners*, the decision of the hearing officer was unappealable, *see id.* at 239, which is not the case here. The decision about which Juweid complains is an intermediate administrative appeal. The final decision rested with the board of regents. *See Botsko*, 774 N.W.2d at 853-54 (noting "the commission may avoid the due process violation by submitting the case, on the record previously developed, to a disinterested quorum of current commission members").

The board of regents rejected Juweid's conflict-of-interest claim concerning Attorney Carroll, stating,

> Dr. Juweid further alleges that Assistant Attorney General Carroll's representation of President Mason in the civil suit and the University in the disciplinary matter amounted to an impermissible conflict of interest, requiring President Mason's recusal. . . . Dr. Juweid cites Iowa Rules of Professional Conduct § 32:1.7(a)(1) in support of this contention. This rule addresses ethical conflicts of interest that arise when the concurrent representation of one client is directly adverse to the representation of another. The Attorney General has the duty to prosecute or defend causes of action for which the state or its employees is a party or for which the state's interest requires. [Iowa Code] § 13.2 (2011). This duty applies to state administrative hearings. See 1987 WL 119624 (Iowa A.G.). Dr. Juweid has not demonstrated how Assistant Attorney General Carroll's defense of President Mason in the civil matter adversely affected his representation of the University in the disciplinary matter. While it is true that the final institutional decision rested with President Mason, Dr. Juweid has failed to present evidence tending to indicate that Assistant Attorney General Carroll's

---

> process in the case under the due process clauses of the state and federal constitutions.

*Id.*

representation improperly influenced her decision or that of the Faculty Judicial Panel.

Upon our de novo review, we conclude Juweid was not denied a fair hearing in the administrative proceedings.  We therefore affirm.

**AFFIRMED.**