# IN THE COURT OF APPEALS OF IOWA

No. 15-1797
Filed February 22, 2017

**WILLIAM J. BURKE,**
Plaintiff-Appellant,

**vs.**

**CITY COUNCIL OF CITY OF LANSING, IOWA,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Allamakee County, Richard D. Stochl, Judge.

A former city council member appeals the district court's decision denying his petition for writ of certiorari in which he challenged his removal from the city council. **REVERSED AND REMANDED.**

Erich D. Priebe and David J. Dutton of Dutton, Braun, Staack & Hellman, P.L.C., Waterloo, for appellant.

Beth E. Hansen, Dustin T. Zeschke, and Kevin R. Rogers (until withdrawal) of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

Heard by Danilson, C.J., and Vogel and Vaitheswaran, JJ.

**VAITHESWARAN, Judge.**

Members of the Lansing City Council voted to remove city council member William Burke from office. Burke challenged the action in district court. Following an evidentiary hearing, the court found substantial evidence to support the decision. On appeal, Burke raises several issues, one of which we find dispositive: whether the removal proceeding violated the United States and Iowa Constitutions' guarantees of procedural due process.

## I.    *Background Facts and Proceedings*

The case for Burke's removal arose from claimed violations of our open meetings law. *See* Iowa Code ch. 21 (2015). The law "seeks to ensure, through a requirement of open meetings of governmental bodies, that the basis and rationale of governmental decisions, as well as those decisions themselves, are easily accessible to the people." Iowa Code § 21.1. To that end, meetings of governmental bodies are to be "preceded by public notice . . . and shall be held in open session unless closed sessions are expressly permitted by law." *Id.* § 21.3.

The City of Lansing issued an agenda for a city council meeting stating a closed session would be held "[t]o discuss strategy in matters that are presently in litigation or where litigation is imminent where its disclosure would be likely to prejudice or disadvantage the position of the governmental body in that litigation in compliance with chapter 21.5 of State statutes." After the agenda was issued, the city clerk requested an opinion from the Lansing city attorney as to whether the two topics she understood to be up for discussion in the closed session qualified for closed session under the open meetings law. The city attorney

issued a memo opining that the topics did not qualify for closed session and city council members could be subject to fines and costs for violation of the open meetings law if a court were to determine they lacked a basis for going into closed session.

The city clerk forwarded the memo to the city council members, including Burke. Burke notified the clerk that he disagreed with "the reasons . . . reported to the city attorney . . . for closed session." He prepared a responsive memo explaining what he perceived to be the real purpose of the closed session.

Burke and city council members Bechtel and Volker attended the scheduled city council meeting. The council went into closed session on a two-to-one vote, with Volker casting the no vote. No action was taken in the closed session.

Later, the city council held a special meeting on an unrelated matter. Twenty-four-hour notice of this meeting was not given.

Tensions between the city council and city residents culminated in an investigation by the Allamakee County Attorney into the council's actions. The county attorney filed a petition alleging the two meetings violated Iowa's open meetings law.

The city retained an attorney to represent the city council and its members.[1] The attorney concluded the county attorney had "made some legitimate allegations." She prognosticated that

> each council member named in the lawsuit who participated in a violation of the open meetings law will be fined by the court between $100 to $500 for the violation(s), as well as be held

---

[1] Burke subsequently obtained his own attorney.

responsible for paying all costs and reasonable attorney fees to the County Attorney for having to bring the lawsuit.[2]

The attorney set forth a potential settlement strategy she had discussed with the county attorney that would require Burke's resignation in exchange for dismissal of the lawsuit at the city's cost.

The county attorney and retained attorney addressed the city council and members of the public at a council meeting that Burke did not attend. The retained attorney publicly stated she filed an answer to the county attorney's petition denying the allegations. The attending city council members then went into closed session to discuss litigation strategy.

There followed a letter from the mayor petitioning the city council to remove Burke from office for "willful misconduct and maladministration in office in his handling of several matters relating to violation of the Iowa Open Meetings laws which resulted in legal action against members of the City Council and the City in District Court." Three council members voted "to accept acknowledgment of" a removal petition. After a special council meeting, members Bechtel, Conway, Kolsrud, and Volker voted to remove Burke from office. Burke abstained.

Burke sought certiorari review in the district court. In an amended petition, he alleged in pertinent part that (1) the attorney retained to defend the council members in the open meetings lawsuit filed by the county attorney notified them of the pecuniary consequences if the court were to find violations of the open

---

[2] Although there was significant discussion in the district court about whether the advice was privileged, the mayor read the attorney's e-mail into the public record of the removal proceeding.

meetings law, (2) the mayor's request for his removal was filed soon after, (3) "no sworn witnesses" testified at the hearing on the removal request, (4) the mayor "who lacked direct knowledge of the charges . . . presented argument in support of the" petition, (5) the city council, "acting in a judicial capacity, then voted 4-0 to approve a motion to remove [him] as a member of the Lansing City Council," and (6) four days later, the county attorney dismissed the open meetings lawsuit. Burke further alleged:

> Councilpersons Jeffrey Bechtel, Rebecca Conway, Ross Kolsrud, and Deborah Volker had a conflict of interest in voting on the removal because they were individually-named defendants in the County Attorney's Open Meetings lawsuit. At the time they conducted the removal hearing and voted for removal, each held an expectation that [his] removal . . . from office would procure the dismissal of the Open Meetings lawsuit, thereby protecting each such council member from the possibility that he or she would be held individually liable for open meeting damages.

He also alleged:

> [His] removal . . . from office deprived him of the property interest of his city council compensation and deprived him of his liberty interest in his reputation. The manner in which [his] removal . . . was accomplished lacked fundamental fairness, including deficient notice of the charges made against him, deficient proof of his alleged wrong-doing, the manner in which the removal hearing was conducted, and the conflict of interest held by the quasi-judicial panel of city council members sitting in judgment . . . . [His] removal . . . therefore resulted in an unlawful deprivation of [his] liberty or property without due process of law in violation of the Fourteenth Amendment of the U.S. Constitution and Article I, Section 9 of the Iowa Constitution.

The district court held an evidentiary hearing and considered deposition testimony and other evidence adduced during the district court proceeding. The court denied Burke's petition. Burke moved for expanded findings and conclusions, which the court also denied.

On appeal, Burke raises a number of issues. We begin and end with his contention that the city council's removal proceeding violated procedural due process under the Fourteenth Amendment of the United States Constitution and article I, section 9 of the Iowa Constitution.

## II.    *Error Preservation*

As a preliminary matter, the city council contends Burke failed to preserve error on his due process claims because he did not raise them "at the lower tribunal level (city council)." The council concedes the issue was raised in the district court certiorari proceeding and was decided by the district court, but argues the district court proceeding was in the nature of an appellate action, with the record limited to the record created before the council. *See, e.g.*, *Anderson v. W. Hodgeman & Sons, Inc.*, 524 N.W.2d 418, 420 (Iowa 1994) ("Historically, we have distinguished cases involving a district court's appellate jurisdiction from those invoking its original jurisdiction."); *see also, e.g.*, *Walthart v. Bd. of Dirs. of Edgewood-Colesburg Cmty. Sch. Dist.*, 694 N.W.2d 740, 743 (Iowa 2005) ("A district court on judicial review of the adjudicator's ruling is also limited as to the evidence it may consider."); *State, Dep't of Pub. Safety v. Woodhall*, 376 N.W.2d 897, 898 (Iowa 1985) ("The court reviewing agency action exercises appellate jurisdiction only and is without original authority to declare the rights of parties or the applicability of any statute or rule."). At the same time, the city council asks us to review portions of the record created during the district court proceeding in deciding whether the council's removal decision was appropriate.

The council cannot have it both ways. If the council wishes to hold Burke to the record created before the council, it too must be bound by that record. We

proceed to decide the scope of the record before us because our resolution of that issue will also resolve the error preservation question.

Iowa Code chapter 66 governs the removal of appointed or elected officers. *See* Iowa Code § 66.1A. The chapter sets forth removal procedures and provides that "any city officer elected by the people may be removed from office, after hearing on written charges filed with the council of such city for any cause which would be ground for an equitable action for removal in the district court." *Id.* § 66.29. The chapter states, "Proceedings before the council shall not be a bar to proceedings in the district court as in this chapter provided." *Id.* § 66.30. Proceedings in the district court are to be "summary" and "triable as an equitable action." *Id.* § 66.18; *State v. Callaway*, 268 N.W.2d 841, 842 (Iowa 1978); *State v. Bartz*, 224 N.W.2d 632, 634 (Iowa 1974).

Read together, sections 66.30 and 66.18 authorize two sets of proceedings—one before the city council and another before the district court. Both are original proceedings. A district court reviewing a city council's removal decision may consider evidence submitted to the city council as well as evidence submitted in the judicial proceeding.

As noted, Burke raised his due process challenge to the council's actions in the district court proceeding and obtained a district court ruling on that challenge. Because the record is not limited to matters raised before the council, we conclude he preserved error. *See Cooksey v. Cargill Meat Sols. Corp.*, 831 N.W.2d 94, 99 (Iowa 2013) ("Because the issue was presented to and decided by the district court, we held the issue was preserved . . . ."). We proceed to address the merits of Burke's due process challenge, considering the record

made before the city council, as well as the record made in the district court. Our review of this constitutional issue requires us to make our own evaluation of the facts from the totality of the circumstances. *See Hancock v. City Council*, 392 N.W.2d 472, 473 (Iowa 1986).

### III. Procedural Due Process

The Iowa Supreme Court recently summarized due process as follows:

> The Fifth Amendment to the United States Constitution states that no person shall "be deprived of life, liberty, or property, without due process of law," and the Fourteenth Amendment also states that no state shall "deprive any person of life, liberty, or property, without due process of law." Article I, section 9 of the Iowa Constitution states that "no person shall be deprived of life, liberty, or property, without due process of law." "Due process requires fundamental fairness in a judicial proceeding," so a trial that is fundamentally unfair violates the guarantees of due process in the United States and Iowa Constitutions.

*More v. State*, 880 N.W.2d 487, 499 (Iowa 2016).

Burke argues "the removal proceeding before the city council was fundamentally unfair because "each member of City Council who voted on [his] removal had a conflict of interest—a pecuniary interest—in deciding [his] fate" and the "City Council itself generated the factual record necessary to sustain its decision, which perpetuates its conflict of interest." The city council responds by parsing the council members' votes at the two meetings that were the subject of the open meetings lawsuit and by arguing certain votes were irrelevant. This argument misses the mark.

Due process requires a "fair trial in a fair tribunal." *Botsko v. Davenport Civil Rights Comm'n*, 774 N.W.2d 841, 848 (Iowa 2009) (citation omitted). Burke received neither, because the four city council members who voted to remove

him understood they would have no financial exposure for possible violations of the open meetings law if they removed Burke. The mayor's testimony in the district court is instructive. He was asked whether at the time of the hearing there was "an offer that had been made to the city council members that if Burke was removed from office, the county attorney's open meetings litigation would be dismissed." The mayor responded, "That came to the entire council in the form of an email from [retained counsel] prior to the time of the [removal] hearing, yes." Notably, the mayor read the email, including the settlement offer, into the public record of the removal proceeding and advised the council members that the city's insurance policy would "not cover the cost of any judgment entered by or against each of [them]" and "[a]ny judgment that is entered will be your personal responsibility."

Similarly, the city clerk was asked whether she made "a comment during the removal hearing reminding the city council that the county attorney had an offer on the table that if Burke was removed from office, that the open meetings litigation would be dismissed." She responded, "Yes."

We have considered the city council's reliance on the four council members' statements that "the pending suit had no bearing on their decision" to remove Burke. This self-serving testimony is immaterial because Burke was not required to make a showing of actual prejudice, given "the risk of injecting bias in the adjudicatory process." *See id.* at 853.

We conclude the council members' pecuniary interest in removing Burke rendered the proceeding fundamentally unfair and amounted to a violation of Burke's procedural due process rights. *See Keith v. Cmty. Sch. Dist.*, 262

N.W.2d 249, 253, 260 (Iowa 1978) ("[N]o man is permitted to try cases where he has an interest in the outcome." (citing *In re Murchison*, 349 U.S. 133, 135 (1955)).

If the council members' financial interest in removing Burke were not sufficient to taint the fairness of the removal proceeding, their decision to combine "advocacy and adjudicative functions" was. *See Botsko*, 774 N.W.2d at 853. The evidence necessary to establish "willful misconduct and maladministration in office" was in the hands of the city council members. *Id.* As in *Keith*, "it was necessary for the [council members] to call upon their own personal knowledge and impression . . . because there were no other witnesses." 262 N.W.2d at 260. The fact that their deposition testimony was introduced into the district court record underscores the improper integration of prosecutorial and adjudicative functions. In other words, the council essentially served as prosecutor by apparently authorizing initiation of the removal process. The council members also supported Burke's removal in district court by presenting their own witness testimony, through depositions, to document their personal knowledge of the grounds for removal. In sum, they were involved in prosecuting, investigating, and deciding the removal case. This intermingling of functions amounted to another due process violation.

To add salt to Burke's wound, the council members provided no statement of reasons for their removal decision. The absence of fact findings amounted to a third due process violation. *See Hancock*, 392 N.W.2d at 478 ("[T]he decision of the city following the hearing should have included findings of fact, in writing,

which would inform the parties of the basis of the decision and aid in a district court's certiorari review of its action.").

Because the removal proceeding violated Burke's right to procedural due process, we reverse and remand for entry of an order sustaining the writ of certiorari. *See id.* at 480.[3]

## IV. *Expenses and Attorney Fees*

Burke contends Iowa Code chapter 66 authorizes him to recover his expenses and attorney fees. Section 66.23 states, "If the petition for removal is dismissed, the defendant shall be reimbursed for the reasonable and necessary expenses incurred by the defendant in making a defense, including reasonable attorney's fees, as determined by the court." Burke seeks attorney fees "[i]f the court grants [his] petition for writ of certiorari and declares that his removal was illegal." The city council counters that the city's ordinance does not authorize fees.

The ordinance does not speak to the question of expenses and fees, while section 66.23 authorizes the payment of expenses and fees on the dismissal of the removal petition. Section 66.23 is controlling. We reverse and remand for a determination of the expenses and fees payable to Burke's attorney.

**REVERSED AND REMANDED.**

---

[3] The city council is not without a remedy. Chapter 66 provides several methods for removing public officials. *See* Iowa Code § 66.3; *Botsko*, 774 N.W.2d at 854 (noting commission could explore the possibility of pursuing the case "before an untainted body").